**Scott A. Shorr**, OSB No. 961873
Email: sshorr@stollberne.com
**Timothy S. DeJong**, OSB No. 940662
Email: tdejong@stollberne.com
**Nadine A. Gartner**, OSB No. 103864
Email: ngartner@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Fifth Floor
Portland, Oregon 97204
Telephone:    (503) 227-1600
Facsimile:    (503) 227-6840

FILED 14 NOV '11 15:37 USDC-ORP

**Eric L. Cramer** (*pro hac vice* application forthcoming)
Email: ecramer@bm.net
**Shanon J. Carson** (*pro hac vice* application forthcoming)
Email: scarson@bm.net
**Patrick F. Madden** (*pro hac vice* application forthcoming)
Email: pmadden@bm.net
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone:    (215) 875-4656
Facsimile:    (215) 875-4604

**Attorneys For Plaintiffs**
[Additional counsel appear on signature page]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LARRY ARNETT and RONDA ARNETT, individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A. and BAC, HOME LOANS SERVICING, L.P.,<br><br>Defendants. | Case No. **CV '11 - 1372    SI**<br><br>**CLASS ACTION ALLEGATION COMPLAINT**<br>(Unjust Enrichment; Violation of Truth in Lending Act (15 U.S.C. § 1601, *et seq.*); Violation of RESPA (12 U.S.C. § 2601, *et seq.*); Breach of Contract/Breach of Implied Covenant of Good Faith and Fair Dealing/Unconscionability; Breach of Fiduciary Duty; Conversion; Violation of Unlawful Debt Collection Practices Act (ORS 646.639))<br><br>**DEMAND FOR JURY TRIAL** |

Page 1 - CLASS ACTION ALLEGATION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Plaintiffs Ronda and Larry Arnett, individually and on behalf of all others similarly situated, by and through their undersigned attorneys, bring this class action against Bank of America, N.A. ("BOA") and BAC Home Loans Servicing, L.P. ("BAC Servicing") (collectively, "Defendants"). The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others:

## INTRODUCTION

1.

Plaintiffs and class members currently have or formerly had loans or lines of credit with Defendants, secured by their residential properties.

2.

Defendants unlawfully engaged in a pattern and practice of forcing Plaintiffs and class members to purchase and/or maintain flood insurance in excess of the amounts required by federal law, in amounts greater than Defendants' secured interest in the property, and contrary to the amounts agreed upon in the relevant loan and mortgage documents.

3.

BOA force-places flood insurance by sending form letters claiming that borrowers do not have adequate flood insurance without regard to whether adequate coverage is in place. Even when borrowers send in proof of adequate flood insurance coverage, BOA disregards such information and force-places high premium flood insurance policies and engages in a pattern and practice of mailing harassing letters and placing repeated harassing telephone calls. Throughout this process, BOA misrepresents that its requirement that borrowers obtain additional flood insurance at the borrower's expense is required by federal laws for property owners in "Special Flood Hazard Areas" ("SFHAs").

Page 2 - CLASS ACTION ALLEGATION COMPLAINT

4.

Defendants force borrowers to pay for insurance policies through BOA's former wholly owned subsidiary insurance company, Balboa Insurance Group ("Balboa") (which BOA sold as of June 2011), or other affiliated companies at excessive prices, and gave or accepted unlawful kickbacks, referral fees, commissions, or other compensation on the transactions, thereby realizing unlawful financial gains.

5.

Once BOA forces a borrower into one of its affiliates' excessively priced insurance policies, it ensures payment of the premium by paying it and then withdrawing the amount from the mortgagor's escrow account or adding it to the borrower's credit line balance.  Moreover, BOA engages in a pattern and practice of writing harassing letters and placing repeated and harassing telephone calls with regard to its force-placed insurance program.

6.

There is no reasonable or good faith explanation for BOA demanding that class members secure flood insurance on their properties over and above BOA's security interest in the properties.

7.

Defendants forced Plaintiffs and class members to pay for insurance without adequately and clearly disclosing the terms of such requirements and without complying with disclosure and consent requirements under federal law.

8.

Defendants' actions violate the Truth in Lending Act, 12 U.S.C. § 1601, et seq. ("TILA"), and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, et seq. ("RESPA").

Page 3 - CLASS ACTION ALLEGATION COMPLAINT

9.

Defendants' actions constitute a breach of the mortgage/loan contract between the borrowers and BOA and a breach of the implied covenant of good faith and fair dealing. Defendants' actions also constitute unjust enrichment, conversion, are unconscionable and violate state laws.

10.

Plaintiffs seek monetary, injunctive and declaratory relief, penalties and attorneys' fees and costs on behalf of themselves and all class members.

## PARTIES

11.

Plaintiffs Larry Arnett and Ronda Arnett are married residents of Roseburg, Oregon, and own real property there. Their mortgage loan is currently assigned to BOA. Plaintiffs are members of the class they seek to represent.

12.

Defendant Bank of America, N.A. ("BOA") is a national bank association headquartered in Charlotte, North Carolina. BOA does business in Oregon and throughout the United States.

13.

Defendant BAC Home Loans Servicing, L.P. ("BAC Servicing") was a wholly owned subsidiary of BOA headquartered in Calabasas, California. BAC Servicing services mortgage loans and lines of credit owned by BOA, including loans and lines of credit secured by real property located in Oregon and throughout the United States. On July 1, 2011, BAC Servicing was merged into BOA. At all relevant times, BOA controlled, directed, and approved BAC Servicing's conduct.

Page 4 - CLASS ACTION ALLEGATION COMPLAINT

## JURISDICTION AND VENUE

14.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the federal Truth in Lending Act, 12 U.S.C. § 1601, *et seq.* ("TILA").

15.

This Court has supplemental jurisdiction over Plaintiffs' state and common law claims pursuant to 28 U.S.C. § 1367.

16.

Jurisdiction is also proper in this Court pursuant to the Class Action Fairness Act ("CAFA") because the matter in controversy in this action, on information and belief, exceeds $5,000,000.00, exclusive of interest and costs, Plaintiffs and Defendants are citizens of different states, and there are more than 100 members of the class.

17.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the acts, events and/or omissions giving rise to this action took place in this District. Plaintiffs reside in Oregon and Defendants regularly conduct business in Oregon.

## FACTUAL ALLEGATIONS

### A.    The National Flood Insurance Program and Regulations

18.

The purpose of the federal National Flood Insurance Program ("NFIP") is to reduce the federal government's burden to provide disaster relief to flood prone areas by providing a federal flood insurance scheme. Payments for flood losses under the NFIP are the exclusive source of

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

such insurance payments, and federal agencies tasked with implementing the NFIP, including the Federal Emergency Management Agency ("FEMA"), proscribe minimum and maximum limits on how much flood insurance a homeowner can have and how much the insurance policy will pay in the event of a loss.

19.

In the 1994 Amendments to the National Flood Insurance Act of 1968, 42 U.S.C. § 4001, et seq. ("NFIA"), Congress required lenders to ensure that homeowners had flood insurance for property located in areas designated as Special Flood Hazard Areas ("SFHAs") by FEMA. Lenders are required to ensure that properties in such areas pledged as security for loans have flood insurance equal to the lesser of: (1) the maximum insurance coverage available through the NFIP, which is $250,000; (2) the outstanding balance of the loan; or (3) the replacement cost of the property.

20.

Requiring the borrower to carry flood insurance coverage in an amount that exceeds the replacement value of the collateral creates an "excess insurance" situation in which more insurance is required by the lender than is necessary to protect the lender's interest in the collateral.

### B. BOA Has Force-Placed Plaintiffs and Class Members Into Unnecessary and Inflated Flood Insurance

21.

In July 2008, Plaintiffs Larry Arnett and Ronda Arnett obtained a mortgage loan in the amount of $135,000.00 from KeyBank National Association ("KeyBank") on a residential property in Roseburg, Oregon.

Page 6 - CLASS ACTION ALLEGATION COMPLAINT

22.

As a condition precedent to obtaining this mortgage loan from KeyBank, Plaintiffs were required to and did sign a "Notice of Special Flood Hazards and Availability of Federal Disaster Relief Assistance" ("Flood Hazard Notice"). The Flood Hazard Notice stated that Plaintiffs' property was located in a "special flood hazard area" and that "the community in which the property securing the loan is located participates in the National Flood Insurance Program (NFIP)." The Flood Hazard Notice further stated that federal law would not allow KeyBank to make the loan "if you do not purchase flood insurance."

23.

The Flood Hazard Notice stated that the "flood insurance purchased must cover *the lesser of*: (1) the outstanding principal balance of the loan; or (2) the maximum amount of coverage allowed for the type of property under the NFIP. Flood insurance coverage under the NFIP is limited to the overall value of the property securing the loan minus the value of the land on which the property is located." (Emphasis added.)

24.

The Flood Hazard Notice is incorporated into the mortgage documents, and is referenced in the Lender's Flood Insurance Requirements. The Flood Insurance Requirements indicate that the Lender "requires that an original flood insurance policy (or an application for such insurance) and a prepaid receipt for the first year's premium, signed by the insurance agent, be presented at closing." It states, in pertinent part:

> [f]lood insurance coverage must be for **the lower of**:
> - 100% of the replacement cost of the insurable value of the improvements.
>                         OR
> -    The maximum insurance available under the appropriate National Flood
>      Insurance Administration Program
>                         OR

Page 7 - CLASS ACTION ALLEGATION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

- The outstanding principal balance of the loan plus any junior lien loan amounts.

> When the unpaid principal balance of the mortgage represents the lowest option, the unpaid principal must be at least 80 percent of the replacement cost of the insurable value of the improvements. However, if the unpaid principal balance is less than 80 percent of the replacement cost of the insurable value of the improvements, then the required insurance coverage amount must be at least 80 percent of the insurable value of the improvements.

(Emphasis added).

25.

Plaintiffs obtained (and have maintained at all relevant times) flood insurance coverage in the amount of $250,000 at the time the loan was originated through the Hartford Insurance Company. KeyBank never indicated that this amount was in any way inadequate under federal law or Plaintiffs' mortgage. In addition, Plaintiffs also maintained an excess flood insurance policy in the amount of $203,000 through Lloyd's of London. Plaintiffs also maintained a separate and independent flood insurance policy in the amount of $27,500 on their out-building/garage.

26.

In or about November 2008, Plaintiffs were notified that the servicing of their mortgage was transferred to Countrywide Bank, FSP. The mortgage was subsequently transferred from Countrywide Bank to BOA (when BOA acquired Countrywide). Plaintiffs continued to make payments to Defendants under the terms and conditions originally agreed upon with KeyBank.

27.

On or about July 22, 2009, Defendants sent Plaintiffs a form letter indicating that BOA had "recently discovered" that Plaintiffs' flood insurance coverage was "not adequate" and that additional coverage in the amount of $109,022.00 was required. The letter stated: "you are required by the terms of your mortgage/deed of trust and/or Federal law to have adequate flood

Page 8 - CLASS ACTION ALLEGATION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

insurance on your Property," and demanded "verification of acceptable flood insurance coverage." The letter further stated that if verification was not received, "BAC Home Loan Servicing LP, a subsidiary of Bank of America, N.A. ('BAC Home Loans') will purchase the additional required flood insurance coverage (Lender-Placed Insurance) at your expense and charge you for the cost of the insurance." The letter stated that the cost of the force-placed insurance would be an annual premium of $562.14.

28.

The letter further stated that "[t]o maintain acceptable insurance, we require that you maintain flood insurance coverage in an amount at least equal to the lesser of:  (1) All Loans; (2) the maximum insurance available under the NFIP for participating communities, which is currently $250,000; or (3) the replacement value of the improvements to your Property."

29.

The letter also stated that (1) force-placed insurance may be purchased through "affiliates" of BOA; (2) BOA and its affiliates "may receive a commission or other compensation in connection with obtaining this coverage"; (3) the premium Plaintiff would be forced to pay "may be more expensive and will likely provide less coverage than was previously in effect or that you can obtain on your own"; and (4) the force-placed insurance will only protect BOA's interest in Plaintiffs' property.

30.

Defendants did not and cannot identify any changes in the mortgage documents or circumstances surrounding the loan that justify Defendants' representations that Plaintiffs' coverage was suddenly "not adequate." The letter falsely implied that BOA's demand of additional coverage was mandated by federal law and/or the mortgage agreement. Neither

Page 9 - CLASS ACTION ALLEGATION COMPLAINT

federal law nor the mortgage required Plaintiffs to maintain flood insurance in an amount greater than the principal balance of the mortgage loan, and Plaintiffs' existing coverage was not inadequate under federal law or the mortgage agreement.

31.

In response to this letter, Plaintiffs provided Defendants with proof of adequate flood insurance.

32.

On or about September 14, 2010, Defendants sent another letter to Plaintiffs stating that Defendants had "recently discovered" that Plaintiffs' flood insurance coverage was "not adequate" and that additional coverage in the amount of $87,280.00 was required. The September 14, 2010 letter further stated that "to maintain acceptable insurance, we require that you maintain flood insurance coverage in an amount at least equal to the lesser of: (1) the maximum insurance available under the NFIP for participating communities, which is currently $250,000; or (2) the replacement value of the improvements to your Property."

33.

The language in the September 14, 2010 letter is inconsistent with the Flood Hazard Notice, Plaintiffs' mortgage agreement and the NFIA, and omits mention of the third option which is to insure the property in an amount equal to the outstanding principal balance of the loan.

34.

In response to the September 14, 2010 letter, Plaintiffs again provided Defendants with proof of adequate flood insurance. Notwithstanding that Plaintiffs had adequate flood insurance, Defendants set up and then dunned Plaintiffs' escrow account for unnecessary flood insurance.

Page 10 - CLASS ACTION ALLEGATION COMPLAINT

35.

Defendants did not and cannot identify any changes in the mortgage documents or circumstances surrounding the loan that justify Defendants' representations that Plaintiffs' coverage was suddenly "not adequate." The September 14, 2010 letter falsely implied that BOA's demand of additional coverage was mandated by federal law and/or the mortgage agreement. Neither federal law nor the mortgage required Plaintiffs to maintain flood insurance in an amount greater than the principal balance of her mortgage loan, and Plaintiffs' existing coverage was not inadequate under federal law or the mortgage agreement.

36.

On information and belief, BOA has made identical or similar misrepresentations to thousands of other persons who are similarly situated to Plaintiffs, in order to justify force-placing them into excessive, high-premium flood insurance policies for their properties.

37.

On or about June 16, 2011, Defendants sent another letter to Plaintiffs stating that "[o]ur records indicate that you currently have no flood insurance coverage" and that coverage in the amount of $250,000.00 is required at an approximate cost of $2,448.00 (for an annual premium).

38.

On or about June 22, 2011, Plaintiffs replied that their flood insurance coverage had not expired, had been renewed as of June 28, 2011, and that only their excess flood insurance (for an additional $203,000 over and above the $250,000 also in place) had expired. Plaintiffs' excess policy was not required by federal law or by the mortgage agreement. Plaintiffs attached proof of the current adequate insurance in the amount of $250,000.00 to their letter.

Page 11 - CLASS ACTION ALLEGATION COMPLAINT

39.

Disregarding Plaintiffs' letter, Defendants sent a "Second Notice" on or about July 10, 2011, and again stated that Defendants' "records indicate that you currently have no flood insurance coverage."

40.

Notwithstanding that Plaintiffs had adequate flood insurance in place and even repeatedly provided proof of that fact to BOA, BOA on or about August 2, 2011, force-placed an additional $250,000 flood insurance policy on Plaintiffs' property, purchased through Balboa, and charged Plaintiffs' escrow account $2,448.00 for that coverage as an annual premium. BOA also forced-placed an additional flood policy for Plaintiffs' garage at an additional annual cost of $114.75, which BOA extracted from Plaintiffs' escrow account.

41.

Despite the foregoing facts, which were at all times known to Defendants but which they either consciously or recklessly disregarded, Defendants continually harassed Plaintiffs with threatening letters and telephone calls, which were used to attempt to and to ultimately extort additional money from Plaintiffs that they did not owe to Defendants.

42.

Indeed, Defendants used additional threats against Plaintiffs, such as stating that Plaintiffs' mortgage payments are inadequate to cover the amount unjustly deducted from their escrow account for the unnecessary force-placed insurance policy and threatening that Plaintiffs' credit will be damaged if they do not pay. Plaintiffs have repeatedly attempted to reverse the unjust and unlawful charges without success.

Page 12 - CLASS ACTION ALLEGATION COMPLAINT

C.    **BOA's Unlawful Practices**

43.

BOA ties insurance products in with its mortgage loan and home equity financing activities.

44.

BOA enforces this tie in an arbitrary fashion without regard to whether Plaintiffs and the class need flood insurance in the amounts dictated by BOA.

45.

BOA makes its decision to force-place flood insurance together with its affiliate Balboa and other insurance affiliates.  BOA then requires borrowers to purchase flood insurance in excess of what is necessary to meet the requirements of federal law or to protect its interest as a mortgagee and continues to insist on forcing payment for insurance that is unnecessary.

46.

BOA's affiliates charge excessively high insurance premiums above what an independent insurance company would charge, even though those insurance policies are, as described in BOA's letters to Plaintiffs, limited compared with independently written insurance policies.

47.

BOA sends out generic notices to borrowers, including Plaintiffs, stating that the borrower must obtain insurance coverage in amounts dictated by BOA.  The amount of coverage that BOA dictates and requires of borrowers exceeds that required by federal law, as discussed throughout this Complaint.  It exceeds what is necessary to protect BOA's interest in the collateral pledged as security.

Page 13 - CLASS ACTION ALLEGATION COMPLAINT

48.

The relevant mortgage agreements, including Plaintiffs' mortgage documents, provide that the borrower will carry flood insurance on the collateral. Plaintiffs complied with the obligation to carry flood insurance. BOA imposes coverage requirements beyond that required by law as necessary to protect its insurable interest in the property. Defendants can readily extract monies from Plaintiffs and the class because of the threats of negative credit ratings and foreclosure. Moreover, BOA has the power and exercises that power in bad faith to simply extract whatever amounts it deems necessary from Plaintiffs' and the class members' escrow accounts.

49.

Defendants have engaged in the above practices in order to realize unfair financial gains from class members, including Plaintiffs. By adding the cost of force-placed insurance to borrowers' loan balances, Defendants earn additional interest on the amounts charged, and cause borrowers to incur additional costs and fees.

50.

By purchasing force-placed insurance from its subsidiary Balboa and other insurance affiliates, Defendants also earned commissions for Balboa and its other insurance affiliates, and ultimately realized the entire profit on the transaction.

51.

On information and belief, discovery will reveal other direct and indirect financial benefits and incentives that accrue to Defendants as a result of their unfair, unlawful and unconscionable conduct as set forth herein.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## CLASS ACTION ALLEGATIONS

52.

Plaintiffs bring this action individually and on behalf of all others similarly situated, and ask the Court to certify this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

53.

This action satisfies the Rule 23 requirements of numerosity, commonality, typicality, adequacy, predominance and superiority.

54.

Plaintiffs assert COUNT I (unjust enrichment) on behalf of a proposed nationwide class (the "Unjust Enrichment Class") defined as:

> All individuals who, within the applicable statute of limitations, were charged for a force-placed insurance policy procured through Defendants. Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers,and/or employees.

55.

Plaintiffs assert COUNT II (TILA), COUNT III (RESPA), COUNT IV (Breach of Contract/Breach of Implied Covenant of Good Faith and Fair Dealing), COUNT V (Unconscionability) and COUNT VI (Conversion) on behalf of a proposed nationwide class (the "Nationwide Class") defined as:

> All persons with loans financed or serviced by Defendants BOA and BAC Servicing and who were forced by Defendants to pay for flood insurance which exceeded any of the following: (1) $250,000; (2) the replacement cost value of the property pledged as security for the loan; or (3) the total outstanding loan balance (if a traditional loan) or maximum line of credit (if a home equity line of credit). Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

Page 15 - CLASS ACTION ALLEGATION COMPLAINT

56.

Plaintiff asserts COUNT VII (Oregon UDCPA) on behalf of a proposed Oregon Class

(the "Oregon Class") defined as:

> All persons residing in Oregon or who own property in Oregon with loans
> financed or serviced by Defendants BOA and BAC Servicing and who were
> forced by Defendants to pay for flood insurance which exceeded any of the
> following: (1) $250,000; (2) the replacement cost value of the property pledged
> as security for the loan; or (3) the total outstanding loan balance (if a traditional
> loan) or maximum line of credit (if a home equity line of credit). Excluded from
> this class are Defendants, their affiliates, subsidiaries, agents, board members,
> directors, officers, and/or employees.

57.

The Unjust Enrichment Class, the Nationwide Class and the Oregon Class (collectively,

the "Classes") are each composed of thousands of mortgage or HELOC borrowers whose home

financing was originated and/or serviced by Defendants, the joinder of which in one action

would be impracticable. The disposition of the claims of the proposed Class members through

this class action will benefit the parties and the Court. The identities of individual members of

the proposed Classes are readily ascertainable through Defendants' account records.

58.

Plaintiffs' claims are typical of the claims of the proposed Classes, in that Plaintiffs, like

all Class members, were forced into a high-premium flood insurance policy and ultimately

forced to purchase unnecessary and excessive flood insurance. Plaintiffs and all members of the

Classes suffered damages in the form of costs associated with the purchase and maintenance of

these high-premium policies.

59.

Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs have

retained experienced counsel with the necessary expertise and resources to prosecute a

Page 16 - CLASS ACTION ALLEGATION COMPLAINT

nationwide consumer class action. Plaintiffs and their counsel do not foresee any circumstances where the interests of Plaintiffs would be adverse to those of the Classes.

60.

Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting solely individual members of the Classes. Questions of law and fact common to the Classes include, without limitation:

(a) whether Defendants have a policy and practice of misrepresenting to their customers that federal law requires additional flood insurance on mortgages or HELOCs for which such additional flood insurance is not required by law;

(b) whether Defendants' standard flood insurance letters are false, misleading and/or deceptive;

(c) whether Defendants breached their mortgage agreements with customers by demanding and force-placing unauthorized amounts of flood insurance or amounts that were not provided for in the mortgage agreements;

(d) whether Defendants' agreements comply with all mandated consumer disclosures under TILA;

(e) whether Defendants' agreements are void in their entirety under TILA;

(f) whether Defendants' conduct violates the Oregon UDCPA; and

(g) the proper measure of damages.

61.

All members of the Classes have suffered damages as a result of a "common wrong" on the part of Defendants. Damages are easily ascertainable by reference to Defendants' records concerning the members of the Classes.

Page 17 - CLASS ACTION ALLEGATION COMPLAINT

62.

A class action is superior to other available methods for the fair and efficient adjudication

of this controversy.  It would be economically impractical for Plaintiffs and members of the

Classes to pursue individual actions against Defendants as the costs of prosecution would likely

surpass their individual damages.  Defendants continue to engage in the unlawful, unfair and

unconscionable conduct that is the subject of this Complaint.  Class treatment of Plaintiffs'

claims will permit Plaintiffs and the Classes to vindicate their rights against Defendants and

conserve the resources of the Court and the Parties.  Class treatment would also avoid the

possibility of inconsistent outcomes that could result from a multitude of individual actions in

varying jurisdictions nationwide.

## CAUSES OF ACTION

### COUNT I
### Unjust Enrichment
### (on behalf of the nationwide Unjust Enrichment Class)

63.

Plaintiffs restate and incorporate the preceding paragraphs of the Complaint.

64.

Defendants received from Plaintiffs and members of the proposed Unjust Enrichment

Class benefits in the form of overcharges for force-placed insurance policies which are excessive

and unreasonable, and are the result of overcharging and overreaching.  BOA and its affiliates

receive a commission or other compensation in obtaining these policies.

65.

Defendants entered into an agreement whereby Balboa, a former wholly-owned

subsidiary of BOA, would provide force-placed insurance policies to Plaintiffs and the proposed

Unjust Enrichment Class which were paid for by Plaintiffs and the proposed Class at prices that

Page 18 - CLASS ACTION ALLEGATION COMPLAINT

were far higher than the market rates for similar policies. Defendants knew that the charges for these policies were excessive and not the result of good faith practices, and in fact, Defendants profited from commissions and other compensation made possible by these overcharges.

66.

Balboa and other insurance affiliates paid significant monies in kickbacks directly to Defendants in order to be able to exclusively provide force-placed insurance policies at unreasonable rates.

67.

As a result, Plaintiffs and the proposed Unjust Enrichment Class have conferred a benefit on Defendants, and Defendants have knowledge of this benefit. Defendants have voluntarily accepted and retained the benefit conferred on them.

68.

Defendants will be unjustly enriched if they are allowed to retain the benefit, and each nationwide Class member is entitled to and demands an award against Defendants for the amount that they enriched Defendants and for which Defendants were unjustly enriched.

**COUNT II**
**Violation of TILA, 15 U.S.C. § 1601, *et seq.***
**(on behalf of the Nationwide Class)**

69.

Plaintiffs restate and incorporate the preceding paragraphs of the Complaint.

70.

Congress's objective in passing TILA was to ensure that the true cost of goods and services be fully and completely disclosed to the consumer in writing prior to the consumer's purchase and agreement to those terms.

Page 19 - CLASS ACTION ALLEGATION COMPLAINT

71.

Residential mortgage loan agreements and line of credit agreements are subject to the disclosure requirements of TILA and all related regulations, commentary and interpretive guidance promulgated by the Federal Reserve Board.

72.

BOA is a "creditor" as defined by TILA.

73.

As creditors, TILA requires Defendants to timely disclose all finance charges, other charges and third-party charges that may be imposed in connection with a mortgage loan or line of credit.

74.

TILA requires Defendants to make these disclosures clearly and conspicuously.

75.

TILA requires Defendants to accurately and fully disclose the terms of the legal obligation between the parties.

76.

Defendants violated TILA by, inter alia: (i) adversely changing the terms of mortgage loans or credit lines after origination without consent and demanding more insurance than previously required in amounts greater than necessary to protect their interest in the property; and (ii) failing to provide proper notice, after origination, that Defendants were amending the terms of loans or credit lines as described in the relevant mortgage documents.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

77.

The TILA violations set forth above occurred within one year of the commencement of this action. To the extent the violations described above occurred earlier, Plaintiffs did not discover and did not have a reasonable opportunity to discover Defendants' violations until less than one year before this action commenced. Prior to this time, Plaintiffs had no reason or opportunity to complain about Defendants' TILA violations because it was not yet apparent that Defendants' disclosures were incomplete, inaccurate and misleading. Plaintiffs' TILA claim is timely. The statute of limitations on Plaintiffs' TILA claim did not begin to run and/or was equitably tolled until such time that they had a reasonable opportunity to discover Defendants' TILA violations and complain about such violations. It would be manifestly unjust and inconsistent with the purposes of the TILA to apply and enforce an earlier accrual date for Plaintiffs' TILA claim.

78.

Defendants systematically and pervasively engaged in similar violations of TILA to the detriment of other members of the Nationwide Class.

79.

Plaintiffs and the Nationwide Class have been injured and have suffered monetary losses as a result of Defendants' violations of TILA.

80.

As a result of Defendants' violations, Plaintiffs and the Nationwide Class are entitled to recover actual damages and a penalty of $500,000.00 or 1% of Defendants' net worth, as provided by 15 U.S.C. § 1640(a)(1-2).

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

81.

Plaintiffs and the Nationwide Class are also entitled to recover attorneys' fees and costs to be paid by Defendants, as provided by 15 U.S.C. § 1640(a)(3).

**COUNT III**
**Violation of RESPA, 12 U.S.C. § 2601, *et seq.***
**(on behalf of the Nationwide Class)**

82.

Plaintiffs allege and incorporate the preceding allegations of the Complaint.

83.

Plaintiffs' mortgage loan is a federally regulated mortgage loan subject to the requirements of RESPA.

84.

RESPA prohibits the giving or accepting of any fees, kickbacks or things of value pursuant to any agreement or understanding, oral or otherwise, in connection with business incident to a part of a real estate settlement service involving a federally regulated mortgage loan.

85.

RESPA prohibits the giving or accepting of any portion, split, or percentage of any charge made or received for the rendering of real estate settlement services in connection with a transaction involving a federally regulated mortgage loan other than for services actually performed.

86.

24 C.F.R. § 3500.2 defines settlement services to include the provision of services involving flood insurance.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

87.

Defendants have violated RESPA by giving or receiving fees, kickbacks and/or other things of value in connection with obtaining force-placed insurance from BOA's formerly wholly owned subsidiary Balboa and/or other affiliated companies.

88.

Defendants have unlawfully accepted portions, splits or percentages of premiums charged for force-placed insurance, without performing actual services.

89.

As a result of Defendants' RESPA violations, Plaintiffs and the Nationwide Class are entitled to statutory damages equal to treble the amount of costs they incurred as a result of Defendants' force-placement of flood insurance.

90.

Plaintiffs and the Nationwide Class are also entitled to declaratory and injunctive relief forbidding Defendants from engaging in further RESPA violations.

91.

Plaintiffs and the Nationwide Class are entitled to recover their costs and attorney's fees.

92.

Plaintiffs' claim is timely, as this action was filed within one year from the date on which Defendants charged Plaintiff for force-placed insurance.

## COUNT IV
### Breach of Contract/Breach of Implied Covenant of Good Faith and Fair Dealing/Unconscionability
### (on behalf of the Nationwide Class)

93.

Plaintiffs restate and incorporate the preceding paragraphs of the Complaint.

Page 23 - CLASS ACTION ALLEGATION COMPLAINT

94.

Plaintiffs entered into a mortgage contract with KeyBank, which was subsequently

transferred to Countrywide Bank.  BOA subsequently purchased that mortgage contract, thereby

assuming all rights and responsibilities of KeyBank under that contract.

95.

The original mortgage contract required that flood insurance be maintained as a condition

of closing and maintaining the loan.  The original contract contained a section titled "Flood

Insurance Requirements."  That section provides, in pertinent part, that:

5. Flood insurance coverage must be for the lower of:
- 100% of the replacement cost of the insurable value of the improvements;
                          OR
- The maximum insurance available under the appropriate National Flood
  Insurance Administration Program.
                          OR
- The outstanding principal balance of the loan plus any junior lien loan
  amounts.  If the mortgage is a second mortgage, the flood insurance must
  be calculated on the aggregate paid principal balance of the second
  mortgage and all superior liens.

* When the unpaid principal balance of the mortgage represents the lowest option,
the unpaid principal balance must be at least 80 percent of the replacement cost of
the insurable value of the improvements.  However, if the unpaid principal balance
is less than 80 percent of the replacement cost of the insurable value of the
improvements, then the required insurance coverage amount must be at least 80
percent of the insurable value of the improvements.

96.

Prior to, and as a condition to closing, Plaintiffs provided repeated correspondence and

insurance declarations which demonstrated that the property had adequate flood insurance

coverage.

97.

Defendants breached their contract with Plaintiffs by requiring payment for additional

and excessive flood insurance that was not required under the contract.

Page 24 - CLASS ACTION ALLEGATION COMPLAINT

98.

Additionally, the law implies into every contract an obligation of good faith and fair dealing, the purpose of which is to prevent one party's conduct under the contract from impeding the other party's performance of that contract.

99.

Defendants' actions constitute a breach of its duty of good faith and fair dealing in that, to the extent that BOA had any discretion under the contract, it exercised that authority in bad faith by imposing unnecessary insurance on Plaintiffs' mortgage without regard for the fact that BOA's insurable interest was protected by Plaintiffs' existing flood coverage. As a result, BOA wrongfully withdrew money from Plaintiffs' mortgage escrow account and forced them to make this wrongfully increased payment with the implicit threat of negative credit reporting, thereby impeding their ability to continue meeting their obligations according to the terms of the contract.

100.

The provision of the mortgage contract stating that "[w]hat Lender requires pursuant to the preceding sentences [that flood insurance must be maintained in amounts and for periods that Defendants require] can change during the term of the Loan" is unconscionable. To the extent that Defendants rely on that provision to change the requirements at any time and without reason, and even exceed the maximum available under the NFIP, it is unconscionable. Giving Defendants unlimited discretion under that provision is unconscionable.

Defendants' reliance on that unconscionable provision has led to the following, among other things:

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

a)      Defendants demanded that Plaintiffs purchase additional flood insurance coverage despite the fact that Plaintiffs met all insurance requirements at the time of closing;

b)      Defendants force-placed borrowers into its affiliates' flood insurance policies even after borrowers provided proof of adequate flood insurance coverage;

c)      Defendants' affiliates charged excessively high premiums for substantially more limited flood insurance coverage than borrowers could purchase from an independent insurance company;

d)      Defendants withdrew these premiums from customers' escrow accounts or added them to customers' HELOC credit line balances such that they became a part of the customers' loan obligation, which made them subject to negative credit reporting; and

e)      Nowhere in Defendants' mortgages or HELOCs is there any indication that Defendants will ever require a borrower to obtain flood insurance greater than the minimum requirements of the NFIP, although Defendants force-place customers into such excessive coverage anyway.

101.

Considering the great business acumen and experience of Defendants in relation to Plaintiffs and the Nationwide Subclass, the great disparity in the parties' relative bargaining power, the inconspicuous and incomprehensible nature of the contract language involved, the oppressiveness of the terms and Defendants' application of them, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of risk between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

102.

The imposition of flood insurance when a customer already has adequate flood insurance is itself unconscionable.

103.

If the mortgage or HELOC agreements at issue are understood to allow any of these practices, that contract is unconscionable.

104.

Plaintiffs and the Nationwide Subclass who paid excessive and unnecessary flood insurance premiums have sustained damages as a result of Defendants' unconscionable policies and practices as alleged herein and are entitled to rescission and restitution.

105.

Defendants have replicated these actions with respect to all members of the Nationwide Class as part of a scheme to wrongfully increase income to themselves and their affiliates.

106.

Plaintiffs and the Nationwide Class are entitled to compensatory damages resulting from Defendants' wrongful actions in breach of their mortgage contracts and HELOC contracts and in violation of Defendants' obligation of good faith and fair dealing in performing under the contracts.

## COUNT V
**Breach of Fiduciary Duty/Misappropriation of Funds Held in Trust (on behalf of the Nationwide Class)**

107.

Plaintiffs restate and incorporate the preceding paragraphs of the Complaint.

Page 27 - CLASS ACTION ALLEGATION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

108.

Defendants hold funds in escrow for Plaintiffs and the Nationwide Class. These funds are to be used for the purpose of *inter alia* paying taxes and/or insurance premiums when due, and any excess funds are to be returned to the Class under the terms of the Mortgages.

109.

With regard to Plaintiffs, Defendants established an escrow account specifically for the purpose of force-placing flood insurance.  Defendants have accepted or taken monies from Plaintiffs and the Nationwide Class for insurance premiums and/or taxes and have held them in escrow.

110.

Defendants were obligated to hold these escrow funds in trust, and owed Plaintiffs and the Nationwide Class a fiduciary duty with respect to the handling of such funds.

111.

Defendants breached their fiduciary duty to Plaintiffs and other members of the Nationwide Class by:  (i) unilaterally using escrow funds to purchase force-placed flood insurance that Plaintiff and other class members did not want and were not required to obtain, and (ii) profiting from force-placed flood insurance policies that were purchased from escrow funds at the expense of Plaintiffs and other class members.

112.

These actions were undertaken by Defendants in bad faith for their own benefit and were not intended to benefit Plaintiffs or other borrowers.

/ / /

/ / /

Page 28 - CLASS ACTION ALLEGATION COMPLAINT

113.

As a direct result of Defendants' actions and subversion of Plaintiffs' interest to its own

interest, Plaintiffs and the Nationwide Class have suffered injury in the form of unnecessary and

excessive escrow charges and a loss of funds from their escrow accounts.

114.

Plaintiffs and the Nationwide Class are entitled to damages for Defendants' beach of their

fiduciary obligations and misappropriation of escrow funds. In addition, Plaintiffs and the

Nationwide Class are entitled to punitive damages because Defendants acted in bad faith in

deliberate and/or reckless disregard of their rights and its obligation to hold their escrow funds in

trust.

### COUNT VI
#### Conversion
#### (on behalf of the Nationwide Subclass)

115.

Plaintiffs restate and incorporate the preceding paragraphs of the Complaint.

116.

Defendants had and continue to have a duty to maintain and preserve their customers'

mortgage accounts, HELOC accounts and mortgage escrow accounts, and to prevent their

diminishment or alteration through their own wrongful acts.

117.

Defendants wrongfully and intentionally collected insurance premiums from their

customers' mortgage escrow accounts or added such payments to their customers' HELOC

accounts.

Page 29 - CLASS ACTION ALLEGATION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

118.

Defendants collected these premiums by wrongfully and intentionally taking specific and readily identifiable funds from their mortgage customers' escrow accounts or misappropriating funds paid to their HELOC customers' account balances.

119.

Defendants have assumed and exercised the right of ownership over these funds without authorization to do so and in hostility to the rights of Plaintiffs and the Nationwide Subclass without legal justification.

120.

Defendants retain these funds unlawfully without consent of Plaintiffs and the members of the Nationwide Subclass and deprive them from exercising control over the funds.

121.

Defendants intend to permanently deprive Plaintiffs and the Nationwide Subclass of these funds.

122.

Plaintiffs and the Nationwide Class properly own these funds, not Defendants, who now claim that they are entitled to their ownership contrary to the rights of Plaintiffs and the Nationwide Subclass.

123.

Plaintiffs and the Nationwide Class are entitled to the immediate possession of these funds.

124.

Defendants have wrongfully converted these specific and readily identifiable funds.

Page 30 - CLASS ACTION ALLEGATION COMPLAINT

125.

Defendants' wrongful conduct is of a continuing nature.

126.

As a direct and proximate result of Defendants' wrongful conversion, Plaintiffs and the Nationwide Class have suffered and continue to suffer actual damages. Plaintiffs and the Nationwide Subclass are entitled to recover from Defendants all damages and costs permitted by law, including all amounts that Defendants have wrongfully converted, which are specific and readily identifiable.

## COUNT VII
**Violation of Oregon's Unlawful Debt Collection Practices Act Section 646.639**
**(on behalf of the proposed Oregon Class)**

127.

Plaintiffs restate and incorporate the preceding paragraphs of the Complaint.

128.

Plaintiffs and members of the Oregon Class are "consumers" as defined in O.R.S. § 646.639(1)(a).

129.

Defendants and the insurance providers of the force-placed policies are "persons" as defined in O.R.S. § 646.639(1)(h).

130.

The force-placed purchase of flood insurance policies are "consumer transactions" within the meaning of O.R.S. § 646.639(1)(b).

131.

When Defendants sent notices to Plaintiffs and members of the Oregon Class stating that Defendants would force-place flood insurance policies in accordance with federal law and/or

Page 31 - CLASS ACTION ALLEGATION COMPLAINT

their mortgage contracts, Defendants willfully violated O.R.S. § 646.639(2)(k).  In sending those notices, Defendants were threatening to enforce a legal right or remedy that does not exist under either the terms of the mortgage contracts or federal law.

132.

Moreover, when Defendants actually force-placed the flood insurance policies, Defendants necessarily violated O.R.S. § 646.639(2)(n).  Oregon's Unlawful Debt Collection Practices Act prohibits "Collect[ing] or attempt[ing] to collect any interest or any other charges or fees in excess of the actual debt unless they are expressly authorized by the agreement creating the debt or expressly allowed by law."  Defendants collected interest, fee, and commission income on the policies Defendants' force-placed on members of the Oregon Class. Such actions violate Oregon law.

133.

As a direct and proximate result of Defendants' wrongful and unlawful actions, Plaintiffs and members of the Oregon Class have suffered and continue to suffer an ascertainable loss.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Classes, pray for relief as follows:

A.      That this action may proceed as a class action under Fed. R. Civ. P. 23(b)(3), that Plaintiffs be appointed as the representative for the proposed Classes, and that Plaintiffs' counsel be appointed as counsel for the proposed Classes;

B.      That Plaintiffs and the proposed Classes recover the damages determined to have been sustained by them, trebled as provided by law, with any applicable civil penalties, statutory

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

damages and punitive damages, and that judgment be entered against Defendants on behalf of Plaintiffs and each member of the Classes;

C.      That Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents and employees and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from continuing and maintaining its unlawful conduct alleged in this Complaint;

D.      That Plaintiffs and members of the proposed Classes be awarded prejudgment and post-judgment interest, and that such interest be awarded at the highest legal rate from and after the date of service of the Complaint in this action;

E.      That Plaintiffs and the proposed Classes recover their costs of this suit, including attorneys' fees and costs, as provided by law; and

F.      That the Court direct all such further relief that it deems just and appropriate.


## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury as to all claims so triable.

DATED this 14th day of November, 2011.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.

By: _____

**Scott A. Shorr**, OSB No. 961873
**Timothy S. DeJong**, OSB No. 940662
**Nadine A. Gartner**, OSB No. 103864

209 SW Oak Street, 5th Floor
Portland, OR 97204
Telephone:     (503) 227-1600
Facsimile:     (503) 227-6840
Email:         sshorr@stollberne.com
               tdejong@stollberne.com
               ngartner@stollberne.com

Page 33 - CLASS ACTION ALLEGATION COMPLAINT

– And –

**Eric L. Cramer** (*pro hac vice* application forthcoming)
**Shanon J. Carson** (*pro hac vice* application forthcoming)
**Patrick F. Madden** (*pro hac vice* application forthcoming)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone:      (215) 875-4656
Facsimile:       (215) 875-4604
Email:             ecramer@bm.net
                       scarson@bm.net
                       pmadden@bm.net

– And –

**Brett Cebulash** (*pro hac vice* application forthcoming)
**Kevin S. Landau** (*pro hac vice* application forthcoming)
TAUS, CEBULASH & LANDAU, LLP
80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone:      (212) 931-0704
Facsimile:       (212) 931-0703
Email:             bcebulash@tcllaw.com
                       klandau@tcllaw.com

**Attorneys for Plaintiffs**

Page 34 - CLASS ACTION ALLEGATION COMPLAINT