**Tanya Durkee Urbach**, OSB No. 962668
urbacht@lanepowell.com
**Peter D. Hawkes**, OSB No. 071986
hawkesp@lanepowell.com
**LANE POWELL PC**
601 SW Second Avenue, Suite 2100
Portland, OR 97204-3158
Telephone:  503.778.2100
Facsimile:  503.778.2200

**John C. Englander**, *admitted pro hac vice*
jenglander@goodwinprocter.com
**Matthew G. Lindenbaum**, *admitted pro hac vice*
mlindenbaum@goodwinprocter.com
**Dennis N. D'Angelo**, *admitted pro hac vice*
ddangelo@goodwinprocter.com
**Dominic D. Gouker**, *admitted pro hac vice*
dgouker@goodwinprocter.com
**Goodwin Procter LLP**
Exchange Place
Boston, MA  02109
Telephone: (617) 570-8318
Facsimile: (617) 523-1231

**David L. Permut**, *admitted pro hac vice*
dpermut@goodwinprocter.com
**Goodwin Procter LLP**
901 New York Avenue, NW
Washington, DC 20001
Telephone: (202) 346-4182
Facsimile: (202) 346-4444

**Attorneys For Defendants**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

CV No. 3:11-1372 SI

**LARRY ARNETT** and **RONDA ARNETT,**
individually and on behalf of all others
similarly situated,

Plaintiffs,

v.

**BANK OF AMERICA, N.A.** and **BAC,
HOME LOANS SERVICING, L.P.,**

Defendants.

Defendants'
MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

# INTRODUCTION

Plaintiffs' Motion to Compel ("Motion") should be denied in its entirety.  Even though Bank of America has produced over 35,000 pages of responsive documents and committed to producing many times that amount—which will address every relevant substantive issue raised across Plaintiffs' sixteen interrogatories and forty-two requests for production—Plaintiffs request that this Court compel production of at least eleven separate categories of documents or information.  Bank of America's productions (already made or pending) include (1) documents located through a search of the electronic documents of 28 custodians most likely to have responsive information, (2) contracts and policies between Bank of America, its affiliates and third parties pertaining to lender-placed flood insurance, (3) Bank of America's policies and procedures concerning flood insurance practices, (4) lender-placed flood insurance data for members of the putative class members drawn from numerous Bank of America databases, and (5) numerous other categories of information, as described in more detail below.  Although Plaintiffs move to compel on numerous issues, most of these issues are either long since mooted—as described in further detail below—as Bank of America has already agreed to provide Plaintiffs with precisely the documents and information they seek, or frivolous.

Thus, despite Plaintiffs' motion, the only actual dispute which remains concerns the scope of discovery concerning the data, personal identifying information, and documents of the putative class members.  In that respect, Bank of America has been cognizant of this Court's statements that:

> I do think it is generally appropriate not to bifurcate class and merits discovery. **But that said, I also think it is unreasonable to expect discovery that is very burdensome and very expensive and that legitimately can wait until after class certification has been resolved**. . . .
>
> So I think it is important to permit discovery beyond simply form and policy documents and documents that are specific to the Arnetts.  So I do think it is appropriate to provide the plaintiffs with discovery as to how other putative class members have been treated.  That said, I'm very sympathetic to a claim that discovery is overly broad and unduly burdensome, especially in light of what is truly needed.

PAGE 1 -   MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

DeJong Decl., Ex. D at 7, 9 (emphasis added).  Bank of America has endeavored to strike the balance recommended by the Court—in contrast to the Plaintiffs, who have refused to accept anything less than full production of every document in Bank of America's possession concerning every putative class member.  First, where Bank of America maintains relevant information in database form that can be produced through little effort (relatively speaking), it will do so and has committed to do so.  Specifically, Bank of America has offered to produce the lender-placed flood insurance entries in its "complaint" database, with only the names, account numbers, and contact information of the complainant borrowers removed.  Plaintiffs insist on the names and contact information too.

Second, Plaintiffs have requested over a dozen data-points concerning their putative class members.  Unlike the "complaint" database, this information is not housed in one easy to harvest location.  Instead, Bank of America is currently undertaking substantial effort to coordinate information available in multiple systems and databases to provide Plaintiffs with the vast majority of other putative class data points they seek.  Bank of America again maintains, however, that Plaintiffs have no need for borrowers' personally identifying information, such as names, addresses, and social security numbers; and that the data is properly limited to borrowers who contracted on the same and most commonly-used Fannie Mae/Freddie Mac mortgage form, as Plaintiffs did.  Plaintiffs reject this production as well.

Third, Plaintiffs insist that Bank of America produce the origination files and servicing records of each of the members of the putative class.  This request raises the same confidentiality concerns as their other requests—although on a far greater scale— but also presents tremendous burdens for Bank of America, because each origination and servicing file includes approximately 500 pages of material drawn from multiple locations within Bank of America.  Assuming, for sake of argument, a 10,000-person class, Plaintiffs are insisting on a 5,000,000 page production on top of what Bank of America has agreed to produce.  Plaintiffs have not explained why they need this information in addition to the form documents, policies and procedures, contracts and

PAGE 2 -   MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

agreements, 28-custodian email production, complaint database, and putative class member data that Bank of America has already agreed to produce.  To reach compromise on the issue, however, Bank of America has proposed producing a sample of loan origination files and servicing records.  Plaintiffs have rejected this as well.

Beyond the substantive disputes, Plaintiffs' motion mischaracterizes what Bank of America has produced, what Bank of America has agreed to produce, and the parties' discovery dealings to date.  Bank of America has conferred with Plaintiffs on numerous occasions and suggested sensible compromises during phone conferences and by letter.  Yet rather than discuss pragmatics, Plaintiffs have prioritized the form of their requests and Bank of America's responses over substance, resulting in the Motion now before this Court.  Much of the Motion is entirely unnecessary, and should be denied.  In any event, as to the few legitimate disputes, Plaintiffs' positions are unfounded and should be rejected.

## BACKGROUND

### I.    Parties' Discovery Dealings

Bank of America has produced over 35,000 pages of documents via five productions, on February 24, March 29, April 2, April 11, and April 27, 2012.  *See* Declaration of Matthew G. Lindenbaum ("Lindenbaum Decl."), Exs. A-E.  At the outset of the parties' telephone conferences, which spanned more than four hours total on February 27, March 9, and March 13, counsel for Bank of America explained exactly what Bank of America would produce and for what reasons it would not produce other requested documents (due to objections or otherwise).  Although Bank of America explained during these conferences why it made the objections it made and what exactly it would produce, Bank of America agreed to produce amended responses to Plaintiffs' interrogatories and document requests, to memorialize these clarifications.

Approximately two weeks after the last phone conference, on March 28, Plaintiffs served a nineteen page single-spaced letter threatening to move to compel on approximately twenty-five

PAGE 3 -    MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

separate points if Bank of America did not conform its positions to those of Plaintiffs' by April 2, produce a complete privilege log by April 2 (or waive all privileges), and produce all requested documents (which would have encompassed many millions of pages) by April 4.  *See* Declaration of Timothy S. DeJong ("DeJong Decl."), Ex. E.  Bank of America responded with a brief letter on April 2 and a more detailed response on April 12.  Lindenbaum Decl., Ex. F; DeJong Decl., Ex. F.  In its April 12 letter, Bank of America offered additional suggestions for compromise within the areas where there was actual substantive disagreement.  *See* DeJong Decl., Ex. F.  Plaintiffs did not respond to the offer of compromise, and instead served the Motion on April 23.[1]  Bank of America then served amended discovery responses on April 27. Lindenbaum Decl., Exs. G, H.

## II.    Documents That Have Been Or Will Be Produced

Bank of America expects to supplement its productions of over 35,000 pages to date with productions of hundreds of thousands of additional pages of responsive material—much of it drawn from its review of 28 email custodians.  Bank of America has produced or will produce the following categories of documents or data to Plaintiffs:

- **The Arnetts' loan origination and servicing files**:  Bank of America will also supplement its productions with updated records, periodically.

- **Bank of America policy and procedure documents concerning lender-placed flood insurance**:  Flood insurance manuals which contain procedures used in the insurance tracking process, lender-placed insurance letter cycle, quality control, claims, document processing, and customer service.

- **Customer complaints**:  Data taken from a database of "complaints" concerning lender-placed flood insurance that Bank of America maintains in the ordinary course of business.  Although Bank of America intends to exclude from this production personally identifiable information such as borrowers' names and account numbers, Bank of America will otherwise produce the data as it is

---

[1] Bank of America respectfully challenges Plaintiffs' certification under Local Rule 7.1 that the parties had conferred in good faith to resolve all disputes raised in the Motion before the Motion was filed.  Plaintiffs last spoke with Bank of America by phone on March 13, six weeks prior to filing the Motion, and, as described herein, did not account in the Motion for many of Bank of America's clarifications or offers to compromise.  The issues presented by the Motion could have been narrowed had Plaintiffs reached out to Bank of America before filing and explained which of the twenty-five points they raised in their March 28 letter they still believed could only be resolved by seeking court intervention, not to mention if Plaintiffs had *ever* raised certain issues, such as the Motion's point 5, which Bank of America *first learned of* through the Motion.

PAGE 4 -    MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

maintained in the ordinary course of business, which includes information such as the date of the "complaint," a description of the issue, and a description of the resolution.

- **Class member data**:  Data concerning the putative classes.  This data is being drawn from multiple Bank of America systems and databases, because no one database houses all of the responsive information available.  The data will provide what Plaintiffs requested, except that it:

    o  Will be limited to borrowers who contracted with their lender through a mortgage instrument similar to Plaintiffs'.

    o  Will not encompass certain data points that Bank of America does not maintain in the ordinary course of business.

    o  Will not include personally-identifying information such as borrowers' names, social security numbers, addresses, but will, however, include zip codes and a unique borrower identifier for reference.

    o  Will be produced as a set of data, composite from various Bank of America systems and databases, and not through the production of the origination and servicing records of each member of the putative classes.

- **Lender-placed insurance contracts**:  Contracts, agreements, letters, memoranda of understanding, insurance policies, and communications concerning lender-placed flood insurance between Bank of America and the other entities involved with its lender-placed flood insurance, which include information on commissions or other forms of payment, if any, that Bank of America received.

- **Email/electronic document review**:  Emails and electronic documents from the **28** current and former employees of Bank of America or its affiliates who are/were most likely to have documents responsive to numerous of Plaintiffs' requests.  Bank of America has employed broad search terms intended to encompass the documents Plaintiffs have requested.

- **Form correspondence**: Templates of the correspondence concerning flood insurance that Bank of America sent to mortgagors.

- **Form mortgage documents**: Templates of the mortgage instruments that represent the mortgages in Bank of America's servicing portfolio, that are maintained as template forms by Bank of America in the normal course of business.  Bank of America will also provide form flood insurance notifications and any other form documents concerning lender-placed flood insurance that respond to Plaintiffs' requests, to the extent that such documents are maintained in the normal course of business.

- **Organizational charts**:  Organizational charts concerning the structure and hierarchy of persons involved with Bank of America's lender-placed flood insurance practices.

- **Corporate communications**:  Corporate communications between Bank of America, N.A. and BAC Home Loans Servicing, LP concerning flood insurance requirements or practices, to the extent they exist.

- **Loan and servicing files sample**:  In its April 12 letter, Bank of America offered to produce a sample of loan origination and servicing files for borrowers other than the Arnetts, and to discuss how the sample would be selected with Plaintiffs.

PAGE 5 -   MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

Bank of America reiterated this offer in its amended discovery responses, served since the Motion was filed. Plaintiffs never responded.

## ARGUMENT

### 1.    General Objections And Privilege Log

Bank of America's amended discovery responses, served on April 27, incorporate only a few general objections, targeted to issues that apply to all or most of Plaintiffs' discovery requests. *See* Lindenbaum Decl., Exs. G, H. Bank of America agreed to provide amended discovery responses during the parties' telephone conferences, which finished on March 13. Had Plaintiffs not raised a host of new issues in their March 28 letter, which Bank of America sought to clarify before finalizing its amended discovery responses, Bank of America would have served the amended discovery responses much sooner. In any event, during the parties' telephone conferences, Bank of America was repeatedly surprised to learn that Plaintiffs envisioned particular documents that were not at all obviously intended by the broad language of their vague and numerous discovery requests. *See* DeJong Decl., Ex. F at 5-6. This prompted Bank of America to reconsider whether general objections as to vagueness, ambiguity, overbreadth, and undue burden were required in this particular Action. Furthermore, Plaintiffs' statement that Bank of America's original general objections rendered "it generally impossible to know what Defendants are agreeing to produce," Motion at 2, ignores that Bank of America has been very specific about ***exactly*** what categories of documents it is producing—both during the telephone conferences and in its correspondence.

Plaintiffs also ask this Court to deem Bank of America's privilege objections waived because no privilege log has yet been produced. Plaintiffs' position suggests unfamiliarity with large-scale electronic document discovery in a class action. Bank of America is reviewing hundreds of thousands of pages of documents and information in response to Plaintiffs requests, and will not know which pages and documents need to be withheld until this review is complete. In an effort to accommodate Plaintiffs, Bank of America offered to produce "an intermediate

PAGE 6 -    MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

privilege log at a reasonable date prior to the completion of our review of documents, so that [Plaintiffs] may review examples of the responsive documents we are withholding from production." DeJong Decl., Ex. F at 6-7.  Plaintiffs flatly rejected this proposal.  This Court, however, should apply the "holistic reasonableness analysis" called for in such circumstances to deny Plaintiffs' request that assertions of privilege be waived.  *Burlington Northern & Santa Fe Railway Co. v. U.S. Dist. Ct. for Dist. of Montana*, 408 F.3d 1142, 1149 (9th Cir. 2005).[2]

## 2. Class Member Discovery

Plaintiffs' challenge Bank of America's proposed production of class member discovery, which primarily implicates three groups of information:

(a)   A database of "complaints," which Bank of America will produce in its entirety, except for the borrowers' personal information.

(b)   Numerous points of class member data, which Bank of America will produce, despite the burdensome efforts of coordinating data housed in multiple systems and databases.  Bank of America will limit the data to borrowers who contracted on the Fannie Mae/Freddie Mac mortgage form and to exclude borrowers' personal information.  Furthermore, Bank of America does not maintain each item of requested information in the ordinary course of business and cannot produce information it does not have.[3]

(c)   The loan origination and servicing files of putative class members, regarding which Bank of America objects to producing wholesale—not only would the burden on Bank of America be extreme, but Plaintiffs also would be unlikely to review such a vast volume of information—but has offered to produce a meaningful sample.  As with the data, the loan servicing information for any particular borrower is stored in multiple locations.

---

[2] *See also Best Buy Stores, L.P. v. Manteca Lifestyle Center*, LLC, No. 2:10-cv-0389-WBS-KJN, 2011 WL 2433655, at *6 (E.D. Cal. Jul. 14, 2011); *Jumping Turtle Bar and Grill v. City of San Marcos*, No. 10-CV-270-IEG (BGS), 2010 WL 4687805, at *2-4 (S.D. Cal. Nov. 10, 2010); *Coalition for a Sustainable Delta v. Koch*, No. 1:08-CV-00397 OWW GSA, 2009 WL 3378974, at *3-4 (E.D. Cal. Oct. 15, 2009).

[3] To be clear, there is no such thing as a "usable, electronic copy of Defendants' customer database."  *See* RFP No. 33.  Bank of America maintains hundreds of systems and databases that store customer data.  Bank of America is not producing "substitute data that [it] will create," but rather is working to coordinate production of the data it maintains across multiple systems.  The "alternatives" would be to produce (a) all data Bank of America possesses regarding its loan customers, which would present an unfathomably excessive burden, while burying Plaintiffs in irrelevant and incomprehensible information; or (b) produce nothing at all simply because no "usable, electronic copy" of a "customer database" exists.  Neither option is plausible.

PAGE 7 -   MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

Plaintiffs' assertions that "Defendants flatly refuse to produce historical documents regarding class members" until a class is certified and instead "will produce substitute data that they will create" are simply incorrect. During the parties' discovery conferences, in Bank of America's April 12 letter, and in its amended discovery responses, Bank of America offered to produce documents and data maintained within the boundaries explained above.

Plaintiffs challenge Bank of America's position to exclude from production the personally-identifying information, such as the names, street addresses, phone numbers, and social security numbers, of all putative class members, which Bank of America maintains is premature before a class is certified. Plaintiffs have not articulated any legitimate need for the personally-identifying information of Bank of America's borrowers. To the contrary, personally-identifying information need not be produced unless and until the Court determines that Plaintiffs' case meets the requirements of Fed. R. Civ. P. 23.[4] Providing such information is particularly inappropriate where, as here, a pending dispositive motion could render the discovery moot. *See Nangle v. Penske Logistics, LLC*, No. 11cv807-JLS, 2011 WL 5574876, at *2 (S.D. Cal. Nov. 16, 2011) (denying motion to compel putative class contact information in light of pending motion for judgment on the pleadings).

Disclosure of the contact information of Bank of America's customers, at this stage of the litigation, serves no purpose except to give Plaintiffs' counsel the opportunity to fish for additional class representatives, lawsuits, and clients. *See, e.g.*, 2 McLaughlin on Class Actions, § 11: 1 ("In order to avoid converting the class action mechanism into a tool to identify potential new clients, courts ordinarily will not permit putative class counsel to obtain discovery of class members' identities at the precertification stage."). Whether counsel for Plaintiffs have any

---

[4] *See Oppenheimer Fund, Inc.* v. *Sanders,* 437 U.S. 340, 354 (1978) (request for names and addresses is not "within the scope of legitimate discovery"); *Hatch* v. *Reliance Ins. Co.,* 758 F.2d 409, 416 (9th Cir. 1985) (affirming denial of request for "the names of similarly situated investors in order to solicit support for [counsel's] efforts to certify the class"); *Dziennik v. Sealift*, 2006 WL 1455464, at *2 (E.D.N.Y. May 23, 2006) (denying plaintiffs' motion to compel putative class members' identities); Manual for Complex Litigation (Fourth) § 21.222 ("identity of individual class members need not be ascertained before class certification").

PAGE 8 -    MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

"fiduciary duty" to putative class members is not the point—Plaintiffs do not need the information. Statutes including, but not limited to, the Gramm-Leach-Bliley Act and the Right to Financial Privacy Act—while not absolutely prohibiting disclosure of this information— reflect federal government policy that consumer financial services entities that acquire such information take steps to protect the security and confidentiality of the providers of the information; and Bank of America has a responsibility not to hand over such information lightly. Here, Plaintiffs' request is an unwarranted invasion of borrowers' privacy that is unnecessary for Plaintiffs to obtain to bring their motion for class certification.

Plaintiffs also assert that because Bank of America produced the "electronic servicing file and data" for the Arnetts, "this can readily be produced for all class members." This is simply untrue. Bank of America produced the loan origination file and servicing documents and data specific to the Arnetts. This amounted to 582 pages of documents. Plaintiffs insist that Bank of America produce such documents for every member of their putative class. Assuming, for sake of argument, a 10,000 person class, Plaintiffs are insisting that Bank of America produce approximately 5,000,000 pages of documents beyond the hundreds of thousands it is already committed to producing and in addition to the class member data and customer complaint database. Plaintiffs ignore the burden of such a production and the implications for the putative class members' personal financial confidentiality and data security. Finally, Plaintiffs overlook the practical realities of their request. They do not explain how they can possibly review such a large production or require it in light of Bank of America's other productions in this matter.

Bank of America has offered to produce the loan origination and servicing files for a sample of other borrowers in Plaintiffs' putative classes. A 100 borrower sample, for example, would provide Plaintiffs with a more reasonable set of documents to review in response to this request (approximately 50,000), while easing Bank of America's security and burden concerns. *Plaintiffs never responded to this compromise proposal*.

PAGE 9 -   MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

### 3. Borrowers With Different Forms of Mortgages

Plaintiffs claim that they are entitled to data and documents for borrowers regardless of whether or not those borrowers contracted via the Fannie Mae/Freddie Mac mortgage form used for the Arnetts' loan.  Nearly all of Plaintiffs' claims hinge on whether Bank of America's actions were permitted by the Arnetts' mortgage contract; thus, if any class is eventually certified in this action, at most, it would include borrowers who contracted on the variations of the Fannie Mae/Freddie Mac form (which is the most common form used among the millions of mortgages in Bank of America's servicing portfolio).  Moreover, Bank of America has produced exemplar form mortgages that demonstrate the differences in contract language.  Thus, the Court should not compel discovery concerning borrowers with different mortgage forms.

### 4. Refunds to Class Members

There is no dispute here.  As Bank of America told Plaintiffs during the discovery calls, and again in its April 12 letter "we will produce the data requested in subparts (a)-(j) and (l)"— including data regarding refunds to class members.  DeJong Decl., Ex. F at 3 n.3.

### 5. Methods for Detecting Loans for Lender-Placed Insurance

Again, there is no dispute here.  For the very first time on this Motion, Plaintiffs challenge Bank of America's response to Interrogatory No. 6, and for no apparent reason.  *See* DeJong Decl., Ex. E.  In fact, Bank of America has already produced the very policies and procedures for detecting loans for lender-placed insurance that Plaintiffs request.  Lindenbaum Decl., Exs. B. D.

### 6. Payment, Commission and Employee Compensation Information

Bank of America has committed to producing—and has already produced much of—the information it maintains as to "commissions" or "other consideration," if any, that Bank of America received in connection with lender-placed flood insurance.  These responsive documents include contracts or agreements and documents located through Bank of America's review of 28 custodians' electronic documents.  To the extent Plaintiffs seek this information on

PAGE 10 -  MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

per-loan basis, Bank of America has explained that it cannot be provided because no such data is maintained. *See* DeJong Decl., Ex. F. at 3 n.3.

In addition, Plaintiffs move to compel the production of documents that are neither relevant to their claims nor encompassed within their discovery requests. First, Plaintiffs request payments that Bank of America or its affiliates made or received concerning matters other than flood insurance. Such information, however, is not reasonably calculated to lead to discovery of admissible evidence. *See, e.g. Weaving v. City of Hillsboro*, No. CV-10-1432-HZ, 2011 WL 1938128, at *1 (D. Or. May 20, 2011) ("If [d]efendants object to one of [p]laintiff's discovery requests, it is [p]laintiff's burden on his motion to compel to demonstrate why the objection is not justified.") (citation omitted). Discovery on every financial relationship between Bank of America, its affiliates, or its contracting partners is irrelevant to this litigation.

Plaintiffs next contend that RFP No. 22, which requests "[a]ll documents that relate to the commissions earned by or available to any affiliate of BOA or BAC in connection with . . . any flood insurance policy," is intended to encompass incentive compensation provided to individual Bank of America employees. On its face, RFP No. 22 is not so broad, and Plaintiffs have not articulated any rationale as to how the compensation of individual employees is relevant.

Finally, Plaintiffs' have creatively redefined RFP No. 37, which as drafted and served seeks: "All studies, reports, or other similar documents that relate to, reflect, or describe the revenues, profits, or other financial effects of Defendants' flood insurance requirements." Plaintiffs now argue that it encompasses the meeting minutes and materials of Bank of America's board of directors, "merger deal packages," and "investment banker analyses." Again, such documents are not encompassed within a reasonable reading of RFP No. 37. To produce documents responding to Plaintiffs' ever-broadening interpretation of RFP No. 37 would require either the burden of handing over nearly every document Bank of America has in its possession or the ability to read Plaintiffs' minds, where, as here, they envision specific documents but request only vague and general categories. Indeed, as Bank of America has

PAGE 11 - MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

explained to Plaintiffs, the custodial documents will likely include any analysis concerning lender-placed insurance because the custodians are the people who would have been involved with such reporting.  The possibility of such "creative" interpretation of vague discovery requests is one reason why Bank of America served its initial set of General Objections.

### 7.    Audits

During the parties' telephone conferences, Bank of America explained that, although many documents responsive to RFP No. 27 would likely be subject to the bank examination privilege (*see, e.g.* 12 C.F.R. § 4.36) or other privileges or protections, regardless, Bank of America would produce responsive, nonprivileged documents from its custodian review—to the extent such nonprivileged documents exist—as well as a privilege log.  *See* DeJong Decl., Ex. E at 17 (Plaintiffs' March 28 letter reflects Plaintiffs' awareness of Bank of America's position). Accordingly, there does not appear to be a dispute on this issue, and it is unclear why it is before the Court.

### 8.    Identification of Similar Proceedings

Plaintiffs request that Bank of America identify "any lawsuit, administrative proceeding, arbitration, or investigation" in which Bank of America's lender-placed insurance practices have been challenged and reproduce all documents that have been produced in any such proceedings ignores that each proceeding consists of its own claims and defenses, facts, rules, limitations periods, and class definitions.  Plaintiffs request is an impermissible fishing expedition.  Bank of America is not obligated to reproduce to Plaintiffs discovery from every litigation that relates in any way to their complaint.  If the documents Bank of America produced in other matters are relevant and responsive to Plaintiffs requests, then of course Bank of America will produce those documents here too.  Plaintiffs are not also entitled to the irrelevant documents.[5]

---

[5] *See, e.g.*, *Chen v. Ampco Sys. Parking*, No. 08-CV-0422-BEN (JMA), 2009 WL 2496729, at *3 (S.D. Cal. Aug. 14, 2009) (denying request for discovery produced in other cases because plaintiff did not "demonstrate that the information he seeks is relevant to his claims in *this* case") (emphasis in original).

PAGE 12 -  MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

### 9.    Equal Access

Bank of America has withdrawn any "equal access" objections in its amended discovery responses; thus, this point is moot.[6]  *See* Lindenbaum Decl., Exs. G, H.

### 10.    Search Terms

Plaintiffs have requested the search terms Bank of America applied to collect electronic documents from the 28 custodians.  Bank of America has collected these documents and is in the process of reviewing and producing them, with rolling productions beginning within the next two weeks.  Bank of America represents that it employed broad search terms, designed to include the documents that pertain to the claims in this litigation.  Arguing about the search terms before Plaintiffs receive Bank of America's production is premature and unconstructive.  Bank of America suggests that Plaintiffs review the upcoming productions and if, after review, Plaintiffs believe these productions are lacking, raise such requests at that time.

### 11.    Documents Relating to Bank of America's Defenses

In catch-all RFP No. 42, Plaintiffs request "[a]ll documents that relate to any of the allegations, statements, claims, defenses, denials, or affirmative defenses in this action," and Plaintiffs now challenge Bank of America's objection to producing documents as premature. Bank of America asserted various affirmative defenses in its Answer and Defenses—as indeed, it was required to do with respect to certain defenses, or risk waiver—to preserve its arguments as the case moves forward.  Plaintiffs cite no authority for the remarkable proposition that a defendant must produce all documents in support of any defense at this stage of litigation.  In any event, Bank of America is not withholding documents it believes "relat[e] to its defense."

### CONCLUSION

For the reasons set forth herein, Plaintiffs motion to compel should be denied.

---

[6] Bank of America does not hereby concede that such an objection is invalid, but has agreed to produce documents that would have been at issue, notwithstanding this objection.

PAGE 13 -  MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

DATED:  April 30, 2012

LANE POWELL PC


By   s/  Peter D. Hawkes
      Tanya Durkee Urbach, OSB No. 962668
      Peter D. Hawkes, OSB No. 071986

**GOODWIN PROCTER LLP**
      John C. Englander, *admitted pro hac vice*
      David L. Permut, *admitted pro hac vice*
      Matthew G. Lindenbaum, *admitted pro hac vice*
      Dennis N. D'Angelo, *admitted pro hac vice*
      Dominic D. Gouker, *admitted pro hac vice*


      Attorneys for Defendants

PAGE 14 -  MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL