# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **LARRY ARNETT** and **RONDA ARNETT**, individually and on behalf of all others similarly situated, | Case No. 3:11-cv-01372-SI |
| Plaintiffs, | |
| v. | **OPINION AND ORDER** |
| **BANK OF AMERICA, N.A.,** and **BAC HOME LOANS SERVICING, L.P.**, | |
| Defendants. | |

Timothy S. DeJong, Scott A. Shorr, and Nadine A. Gartner, STOLL STOLL BERNE LOKTING & SHLACHTER, P.C., 209 S.W. Oak Street, Fifth Floor, Portland, OR 97204; Eric L. Cramer, Shanon J. Carson, and Patrick F. Madden, BERGER & MONTAGUE, P.C., 1622 Locust Street, Philadelphia, PA 19103; Brett H. Cebulash and Kevin S. Landau, TAUS, CEBULASH & LANDAU, LLP, 80 Maiden Lane, Suite 1204, New York, NY 10038; and Edward F. Haber and Adam M. Stewart, SHAPIRO HABER & URMY, LLP., 53 State Street, Boston, MA 02109.

       Of Attorneys for Plaintiffs

Peter D. Hawkes, Tanya Durkee Urbach, LANE POWELL, P.C., 601 S.W. Second Avenue, Suite 2100, Portland, OR 97204-3158; John C. Englander, Matthew G. Lindenbaum, Brian M. LaMacchia, GOODWIN PROCTER, LLP, Exchange Place, 53 State Street, Boston, MA 02109; and David L. Permut, GOODWIN PROCTER, LLP, 901 New York Avenue, NW, Washington, DC 20001.

       Of Attorneys for Defendants

**SIMON, District Judge**.

Plaintiffs filed a Motion for Order Determining that Three Previously-Produced Documents are Not Privileged or Confidential. Dkt. 134. Plaintiffs argue that the documents at issue are not privileged and that, to the extent they are, any privilege has been waived. After reviewing the documents *in camera*, Plaintiffs' Motion is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

In this putative class action, Plaintiffs allege that they and the other putative class members have or formerly had loans or lines of credit with Defendants that were secured by residential real property. Compl. ¶ 1. Dkt. 1. Plaintiffs further allege that Defendants "forced" Plaintiffs and the other putative class members "to purchase and/or maintain flood insurance in excess of the amounts required by federal law, in amounts greater than Defendants' secured interest in the property, and contrary to the amounts agreed upon in the relevant loan and mortgage documents." *Id*. ¶ 2. A class has not yet been certified.

On July 11, 2012, the Court GRANTED IN PART AND DENIED IN PART Defendants' Motion for Judgment on the Pleadings. Dkt. 82. As a result, Plaintiffs' claims under federal law and certain state law claims were dismissed, and Plaintiffs' claims for breach of contract (Count IV, alleging both breach of express contract and breach of the implied covenant of good faith and fair dealing) and for conversion (Count VI) remain. *Id.*

## DISCUSSION

### A.  Standards for the Attorney-Client Privilege

#### 1.  Governing law of privilege

The federal law of privilege applies in claims arising under a federal question. Fed. R. Evid. 501. "[I]n a civil case, state law governs privilege regarding a claim or defense for which

state law supplies the rule of decision." *Id*. Where there are federal question claims and pendent

state law claims present, however, the federal law of privilege applies to all claims. *Agster v.*

*Maricopa Cnty.*, 422 F.3d 836, 839 (9th Cir. 2005). (citations omitted). Here, the parties relied

on federal law in briefing this Motion. It appears, however, that Oregon's law of privilege may

apply instead to this Motion because the federal question claims were dismissed and only state

law claims remain. This Court need not reach which law of privilege governs, however, because

the outcome of this Motion is the same under federal or Oregon law. Accordingly, this Motion

will be analyzed under federal law, noting where Oregon law differs.

### 2.  Attorney-client privilege generally

"The attorney-client privilege protects confidential communications between attorneys

and clients, which are made for the purpose of giving legal advice." *U. S. v. Richey*, 632 F.3d

559, 566 (9th Cir. 2011) (citation omitted). The party asserting privilege has the burden of

establishing the applicable privilege. *Id*. The fact that a person is a lawyer does not make all

communications with that person privileged. *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir.

2009) (quotations and citation omitted). The attorney-client privilege exists where: "(1) legal

advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the

communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his

instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless

the protection be waived." *Richey*, 632 F.3d at 566. (quotations and citation omitted). The

privilege also applies to communications from attorney to client as long as based, at least in part,

upon a confidential communication from the client to the attorney. *See In re Fischel*, 557 F.2d

209, 211 (9th Cir. 1977) (attorney-client privilege extends to attorney communications or advice

that effectively reveal the substance of the client's confidential communication); *see also Rehling*

*v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000) ("Although the attorney-client privilege

generally attaches only to statements made by the client, statements made by the lawyer to the client will be protected in circumstances where those communications rest on confidential information obtained from the client or where those communications would reveal the substance of a confidential communication by the client.") (internal citations omitted).

However, "because it impedes full and free disclosure of the truth, the attorney-client privilege is strictly construed." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002) (quotations and citation omitted). It is vital to the privilege "that the communication be made in confidence for the purpose of obtaining *legal* advice *from the lawyer*." *United States v. Gurtner*, 474 F.2d 297, 298 (9th Cir. 1973) (emphasis in original) (quotations and citation omitted).

Attorney-client issues involving corporate clients present "special problems" in applying the privilege, particularly with respect to what statements by what employees are covered by the privilege. *See Admiral Ins. Co. v. United States Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1492 (9th Cir. 1989). Federal law follows the Supreme Court's decision in *Upjohn*, applying a case-by-case formulation and establishing that that attorney-client privilege can apply to communications by any corporate employee "when the communications concern matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation." *Id*. (citing *Upjohn v. United States*, 449 U.S. 383, 394 (1981)).[1]

### 3.  Waiver of the attorney-client privilege

The party asserting privilege must prove that the privilege has not been waived. *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981). Disclosure constitutes

---

[1] Oregon law rejects the *Upjohn* formulation and defines "representative of the client" by statute as a principal, officer, director, person who has a certain level of authority, or a person who makes or receives a confidential communication "for the purpose of effectuating legal representation" while in the scope of employment for the client. O.R.S. 40.225(1)(d).

waiver of the attorney-client privilege as to communications about the matter actually disclosed. *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010). Disclosure does not operate as a waiver if: (1) the disclosure was inadvertent; (2) the holder of the privilege took reasonable steps to prevent disclosure; and (3) the holder promptly took legal steps to rectify the error. Fed. R. Evid. 502(b).[2]

## B.  The Documents at Issue

### 1.   The instant message conversation (BACARNETT-D0397314-15)

The Court has reviewed the disputed instant messaging conversation *in camera*, and it appears to be an informal discussion between two employees, neither of whom are attorneys, that was forwarded via email to a third employee, who is also not an attorney.[3] The employees appear to be displeased with a company policy and are discussing: (1) that others (including attorneys) are unhappy with the policy; (2) frustration at not getting support from legal and other divisions; and (3) possibly getting the product, credit, servicing, and legal departments involved in the conversation.

The Eighth Circuit has set out a five-part test to determine whether a corporate employee's communications are privileged. *In re Bieter*, 16 F.3d 929, 936 (8th Cir. 1994) (setting out the test for employee communications and then applying that test to an independent contractor). The five *Bieter* factors are whether: "(1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation

---

[2] Under Oregon law, disclosure of a privileged document in discovery does not necessarily waive the privilege. *See Goldsborough v. Eagle Crest Partners, Ltd.*, 838 P.2d 1069, 1073 (Or. 1992). Factors a court may consider in analyzing waiver include whether (1) the disclosure was inadvertent; (2) any attempt was made to remedy any error promptly; and (3) preservation of the privilege will occasion unfairness to the proponent. *Id.*

[3] The parties agree that none of these three employees are attorneys.

could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents." *Id*.

The Ninth Circuit found the reasoning in *Bieter* persuasive and adopted its principles. *United States v. Graf*, 610 F.3d 1148, 1158-59 (9th Cir. 2010) (adopting *Bieter* and applying its reasoning in analyzing whether an independent contractor was the equivalent of an "employee" for privilege purposes). Given the Ninth Circuit's express approval of *Bieter*, this Court will apply its five-part test for corporate employee privilege.[4]

Here, there is no attorney involved in the conversation and it does not appear to be made for the purpose of securing legal advice. There is also no evidence, and the content of the discussion appears to belie, that this discussion was held at the direction, request, or behest of an attorney or corporate supervisor in order to secure legal advice. Additionally, there is no evidence that any of the involved parties believed that the purpose of this specific communication was to enable an attorney to provide legal advice to Bank of America. *See, e.g.*, *Admiral Ins.*, 881 F.2d at 1492-93 (corporate employees' conversations with attorney privileged because the employees were directed by their employer to speak with the attorney and were aware that the purpose of the interviews was to enable the attorney to provide legal services). Further, it does not appear that this conversation was intended to be confidential, as it discusses several different opportunities to raise the issue at various company meetings. Thus, the *Bieter* elements are not met in this case.

Defendants argue that legal advice may be transmitted between corporate employees without waiving privilege. As the cases cited by Defendants discuss, this is true under certain

---

[4] The *Bieter* test has been applied by other courts in the Ninth Circuit. *See, e.g.*, *Davis v. City of Seattle*, No. C06-1659Z, 2007 WL 4166154, at *2 (W.D. Wash. Nov 20, 2007).

circumstances, such as when the privileged communication is discussed amongst management, transmitted so that non-attorney employees may be properly informed of legal advice and act appropriately, or transmitted to relay information requested by attorneys. *See* Opp. Br. at 9 and cases cited therein. Defendants' argument is unavailing with regard to the instant message at issue, however, because Defendants fail to prove that the content of the instant message conversation was legal advice being transmitted between non-attorneys to inform them of any legal advice that had been requested from and given by an attorney, or was relaying information requests from attorneys for the facilitation of legal advice.

Under Defendants' argument, all employee conversations regarding policies of their employer that may have legal implications or that mention what someone thinks an attorney may believe about the policy would be necessarily privileged. That is not the test for privilege. Attorney-client privilege is strictly construed, and each of the elements of a privileged communication must be proven by the party asserting the privilege. *See Martin*, 278 F.3d at 999; *Richey*, 632 F.3d at 566. Here, as discussed above, Defendants have not met their burden to prove the *Bieter* factors. Further, Defendants have not met their burden to prove the general privilege elements that the instant message (1) sought or facilitated legal advice (2) from a legal advisor that was (3) made in confidence (4) by a client of the legal advisor. *See Richey*, 632 F.3d at 566. Thus, the document is not protected by the attorney-client privilege.[5]

### 2.  The presentation (BACARNETT0440652)

The document at issue is a one-page presentation, marked "Attorney-Client Privilege – Do Not Distribute" that was authored by Art Lee, Assistant General Counsel, and presented to

---

[5] The result is the same under Oregon law (which has a more restrictive definition of when a corporate employee's communications are protected by the attorney-client privilege) because Defendants fail to prove that the participants in the discussion were persons of the requisite authority in the organization or that the instant messaging discussion was for the purpose of effectuating legal representation. O.R.S. 40.225(1)(d).

Bank of America's President of Home Loans. It analyzes the business and legal bases and risks associated with converting Countrywide's portfolio to Bank of America's flood insurance placement methodology.

Plaintiffs argue that the document is not privileged because it offers primarily business rather than legal advice. One of the "special problems" in applying privilege in the corporate context is ascertaining when corporate counsel are acting as a legal advisor as opposed to a business advisor, because providing business advice is not protected. *See Admiral Ins*, 881 F.2d at 1492 (there are "special problems" in applying the law of privilege to corporations); *Ruehle*, 583 F.3d at 608 n.8 (business advice does not fall within the purview of attorney-client privilege, even if the advisor is an attorney).

The author of the presentation is an attorney, and a review of the document reveals that he was discussing the benefits and risks of a proposed business policy, focusing primarily on the legal risks. Although the benefits discussed were of a business nature, that is to be expected when weighing the business benefits against legal risk. The primary purpose of the document is to discuss the legal ramifications of the potential business decision. Thus, the document is primarily legal in nature. As explained by one court:

> As this client is a corporation, any advice sought by its representatives will obviously be, on some level, for the purposes of determining how that corporation should conduct its business. However, the Court finds that where, as here, the primary purpose of the communication is to discern the legal ramifications of a potential course of action, that communication is for a "legal" purpose.

*Premiere Digital Access, Inc. v. Central Tel. Co.*, 360 F. Supp. 2d 1168, 1174 (D. Nev. 2005) (applying Nevada law, which is similar to federal law on this issue).

The presentation is protected by the attorney-client privilege. That is not the end of the inquiry, however, because Plaintiffs also argue that to the extent the presentation is privileged,

any privilege has been waived because the document was produced in discovery on August 7, 2012, and Defendants did not attempt to "claw back" the document until December 7, 2012. Plaintiffs argue that the four-month delay does not constitute a "prompt" attempt to remedy the inadvertent disclosure. Defendants respond that their document production was large and complex, other copies of the presentation were listed on earlier privilege logs, and the small number of inadvertently produced documents militates against a finding a waiver.

Defendants represent that they have produced in discovery more than four million pages of documents in this lawsuit. The inadvertent production of a few dozen documents amongst millions of pages does not render Defendants' attempts to preserve privileged documents unreasonable. The record shows that Defendants have used reasonable measures to protect privileged documents. The record also shows that Defendants intended to preserve privilege on the presentation by withholding other copies of the document and sought protection for the document on December 7, 2012. Although it is not clear exactly when or how Defendants first became aware of the inadvertent production of this copy of the presentation,[6] it appears that Defendants sought protection for the document reasonably promptly after discovering its production. Notably, unlike the next document at issue in this motion, this document was not introduced as an exhibit at deposition. Accordingly, the attorney-client privilege was not waived on the presentation.

### 3.  The email chain (BACARNETT-D0207794-809)

Plaintiffs argue that any claim of privilege with respect to this email chain was waived because the document was produced in discovery on May 2, 2012, and introduced as an exhibit at a deposition on October 23, 2012, at which time privilege issues were discussed and

---

[6] Defendants explain only that they became aware of production of the documents at issue in this motion during the course of discovery and deposition.

Defendants did not object to the document as attorney-client privileged. Defendants did not attempt to "claw back" this document until December 17, 2012, 55 days later, and after the document was used again during a second deposition. Defendants also did not include this email chain in their December 7, 2012 letter seeking to "claw back" other inadvertently produced privileged documents. Defendants respond that because an external email was erroneously appended to the top of this email chain they did not realize that this email chain was privileged for some time, and that they promptly sought protection for the document after they realized it was privileged.

Failing to object to a document as privileged during a deposition generally constitutes a waiver of privilege. *See, e.g.*, *Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, No. 06cv2804 BTM (WMc), 2010 WL 275083, at *5 (S.D. Cal. Jan. 13, 2010) ("[U]nder both state and federal law, if a privileged document is used at a deposition, and the privilege holder fails to object immediately, the privilege is waived."); *Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 514 (2009) (failure to object to use of a privileged document at deposition supports a waiver of privilege); *Brandon v. D.R. Horton, Inc.*, No. 07cv1256 J(POR), 2008 WL 2096883, at *3 (S.D. Cal. May 16, 2008) ("Both California and federal law clearly state that failure to assert the attorney-client privilege, especially during deposition, is an absolute waiver of the privilege."); *Fed. Deposit Ins. Corp. v. Ernst & Whinney*, 137 F.R.D. 14, 19 (E.D. Tenn. 1991) ("Because the FDIC allowed this document to be produced and marked as an exhibit to depositions, and because no claim of privilege was asserted at the time it was so produced and marked . . . a waiver has occurred as to this document."). Defendants did not object to the use of the email chain at two different depositions and did not attempt to "claw back" the document

during their first round of such requests on December 7, 2012. This conduct supports a finding of waiver.

Further, unlike with the presentation document discussed previously in this Opinion and Order, Defendants were on notice of potential privilege issues with respect to this email chain as of the October 23, 2012 deposition. The transcript reveals there was some discussion regarding the potentially privileged status of the document. After some discussion, however, Defendants' attorney stated that he was fine with respect to attorney-client privilege concerns but that he would need to look at the document further with respect to the bank examiner privilege and the parties could revisit that issue later to see if there was a mistake. Decl. of Kai Richter Ex. 8 at 6-7. Dkt. 136. Defendants failed promptly to investigate the potential attorney-client privilege issues and indeed did not do so for nearly two months. In fact, Defendants did not revisit this issue until after this document was used a second time at another deposition. Thus, Defendants did not act reasonably or promptly to preserve any potential confidentiality of this email chain. *See, e.g.*, *Atronic Int'l GMBH v. SAI Semispecialists of Am., Inc.*, 232 F.R.D. 160, 165 (E.D.N.Y. 2005) (a six-day delay in rectifying inadvertent disclosure is a factor weighing in favor of waiver); *Harmony Gold USA, Inc. v. FASA Corp.*, 169 F.R.D. 113, 117 (N.D. Ill. 1996) (two-week delay in rectifying inadvertent disclosure considered a "lax" effort). Thus, the attorney-client privilege of this email chain was waived.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Order Determining that Three Previously-Produced Documents are Not Privileged or Confidential (Dkt. 134) is **GRANTED IN PART AND DENIED IN PART**. The instant message is not privileged and ordered produced without redactions, the presentation document is privileged and subject to "claw back," and the email chain is privileged but the privilege has been waived.

IT IS SO ORDERED.

DATED this 29th day of March, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge