# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LARRY ARNETT, RONDA ARNETT, ALICE A. BERGER, LEE M. BERGER, SUSAN LASS, MARK LEMMER, PAMELA LEMMER, KARYL RESNICK, ERIC SKANSGAARD, DONNA M. WADE,** and **EDWARD M. WALLACE, JR.**, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>   v.<br><br>**BANK OF AMERICA, N.A.**, in its own capacity and as successor by merger to **BAC HOME LOANS SERVICING, L.P.**,<br><br>       Defendant. | Case No. 3:11-cv-1372-SI<br><br>**OPINION AND ORDER** |

Timothy S. DeJong, Scott A. Shorr, and Nadine A. Gartner, STOLL STOLL BERNE LOKTING & SHLACHTER P.C., 209 S.W. Oak Street, Fifth Floor, Portland, OR 97204; Eric L. Cramer, Shanon J. Carson, Patrick F. Madden, and Lawrence Deutsch, BERGER & MONTAGUE, P.C., 1622 Locust Street, Philadelphia, PA 19103; Brett Cebulash and Kevin S. Landau, TAUS, CEBULASH & LANDAU, LLP, 80 Maiden Lane, Suite 1204, New York, NY 10038; E. Michelle Drake and Kai Richter, NICHOLS KASTER, PLLP, 80 South Eighth Street, Minneapolis, MN 55402; Edward F. Haber and Adam M. Stewart SHAPIRO HABER & URMY LLP, 53 State Street, Boston, MA 02109. Of Attorneys for Plaintiffs.

Tanya Durkee Urbach and Peter D. Hawkes, LANE POWELL PC, 601 S.W. Second Avenue, Suite 2100, Portland, OR 97204; John C. Englander, Matthew G. Lindenbaum, and Brian M. LaMacchia, GOODWIN PROCTER LLP, Exchange Place, 53 State Street, Boston MA 02109; David L. Permut, GOODWIN PROCTER LLP, 901 New York Avenue, NW, Washington DC 20001. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

This is a national class action under Federal Rule of Civil Procedure 23, brought on behalf of individuals who were allegedly required by Defendant Bank of America, N.A., in its own capacity and as successor by merger to BAC Home Loans Servicing, L.P. ("BANA"), to purchase excessive or unnecessary flood insurance between January 1, 2007 and April 4, 2014. This matter comes before the Court on Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. 268) ("Final Approval Motion") and Plaintiffs' counsel's motion for attorney's fees, costs, and an incentive award for the class representatives (Dkt. 246) ("Fee Motion"), which are unopposed by BANA.

The Court has considered the Final Approval Motion, the Fee Motion, the proposed Settlement Agreement, the papers submitted in connection with both motions, the arguments of counsel, the response of the Settlement Class to the Notice of Class Action Settlement ("Class Notice"), all objections from Settlement Class Members, and the files, records, and proceedings in the above-captioned action ("Action"), which resolves seven separate pending federal court cases.[1] The final approval hearing was held on September 9, 2014.

For the reasons discussed below, Plaintiffs' Final Approval Motion is GRANTED. Plaintiffs' Fee Motion is GRANTED IN PART. Plaintiffs are awarded $2,500 each as an incentive award, Plaintiffs' counsel is awarded $7,750,000 (25 percent of the Settlement Fund of $31,000,000) for attorney's fees and $736,294.42 for costs, and Analytics, LLC, the Claims Administrator, is awarded $630,328.15 in fees and costs.

---

[1] These cases are: *Arnett v. Bank of Am., N.A.*, Case No. 3:11-cv-1372-SI (D. Or.); *Berger v. Bank of Am., N.A.*, Case No. 10-cv-11583 (D. Mass.); *Lass v. Bank of Am., N.A.*, Case No. 1:11-cv-10570 (D. Mass.); *Lemmer v. Bank of Am., N.A.*, Case No. 3:12-cv-00242 (W.D.N.C.); *Resnick v. Bank of Am., N.A.*, Case No. 12-cv-10231 (D. Mass.); *Skansgaard v. Bank of Am., N.A.*, Case No. 2:11-cv-0988 (W.D. Wash.); and *Wallace v. Bank of Am., N.A.*, Case No. 3:12-cv-935-SI (D. Or.).

# BACKGROUND[2]

On November 14, 2011, Larry and Ronda Arnett filed this putative class action before the Court alleging that BANA unlawfully and unfairly profited from commissions and other compensation arrangements with its lender-placed flood insurance vendors, and that BANA unlawfully required borrowers to maintain excessive flood insurance coverage. Alice A. Berger, Lee M. Berger, Susan Lass, Mark Lemmer, Pamela Lemmer, Karyl Resnick, Eric Skansgaard, Donna M. Wade, and Edward M. Wallace, Jr., filed similar putative class action lawsuits in district courts across the country.[3] The plaintiffs are referred to, collectively, as "Plaintiffs." The *Wallace* and *Resnick* actions concern BANA's flood insurance practices regarding borrowers with home equity lines of credit; the *Lemmer* action relates to borrowers in housing cooperatives; and the *Arnett*, *Berger*, *Lass*, and *Skansgaard* actions concern BANA's flood insurance practices in connection with residential mortgage loans written on various form mortgages.

On April 7, 2014, Plaintiffs filed a Consolidated Amended Class Action Complaint ("CAC") in this action, consolidating their claims and adding all other plaintiffs in addition to the Arnetts. Dkt. 225. The CAC asserts that BANA required Plaintiffs to purchase excessive flood insurance coverage and that BANA and its affiliates received improper commissions and other compensation in connection with lender-placed flood insurance. The CAC asserts claims for: (a) unjust enrichment; (b) violation of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*; (c) breach of contract and of the implied covenant of good faith and fair dealing; and (d) conversion.

---

[2] All defined terms contained herein shall have the same meaning as set forth in the Settlement Agreement executed by the parties and filed with the Court. Dkt. 237-1.

[3] The actions were filed as follows: *Berger* on September 17, 2010; *Resnick* on October 1, 2010; *Lass* on April 1, 2011; *Skansgaard* on May 17, 2011; *Arnett* on November 14, 2011; *Wallace* on May 24, 2012; and *Lemmer* on April 20, 2012.

Before filing the CAC, there was significant litigation in the separate federal court actions. Each case involved some motion practice, including motions to dismiss, motions for judgment on the pleadings, discovery motions, and one summary judgment motion. In two cases, class certification was briefed.  All cases involved significant discovery. The discovery efforts were coordinated by Plaintiffs' counsel even before the CAC was filed. A team of four attorneys handled all of the depositions, and the voluminous document production, storage, and review were divided among the various law firms.

The parties attended two full-day mediation sessions in New York on July 19 and 22, 2013. Professor Eric Green of Resolutions, LLC oversaw the mediation sessions. The parties continued negotiating and attended a third mediation session in Boston on September 16, 2013. The parties continued to negotiate and, after several months, finalized the Settlement Agreement.

On April 17, 2014, the Court granted preliminary approval of the Settlement Agreement, conditionally certified the proposed Settlement Class, designated class representatives, appointed class counsel and co-lead class counsel, approved the settlement administration plan, and approved a plan for giving notice to Settlement Class Members. The Court also set deadlines for objecting to the Settlement Agreement and objecting to the Fee Motion.

The Court received objections from seven objectors (collectively, "Objectors").[4] Of these, four objected to the Settlement Agreement and five objected to the Fee Motion.[5] With respect to the Settlement Agreement, Erich B. Neumann objects that the relief obtained is

---

[4] The Court received an eighth objection, from Mr. Donald E. Gunnels, but this objection involves allegations that BANA refused to provide Mr. Gunnels with insurance proceeds that were paid after damage to his home and is not directly related to the pending Settlement Agreement regarding force-placed flood insurance and the evaluation of whether it is fair, reasonable, and adequate. Nevertheless, the Court asked BANA to respond to Mr. Gunnels's objection, and BANA has done so to the satisfaction of the Court.

[5] Two Objectors objected to both the Fee Motion and the Settlement Agreement.

insufficient, payment through an escrow credit is unfair, and the release is too broad. Glenn and Carin Hanna ("the Hannas") object that the Class Notice was insufficient because it did not set forth the value of the claims and the value of class member's estimated specific recovery and that, for the same reasons, the Court cannot evaluate whether the Settlement Agreement is fair, reasonable, and adequate.[6] The Hannas argue that a new Class Notice must be provided. Francis Vitale objects that it is unfair to require class members to request an opt-out form during the injunctive relief time period, that the release is too broad, and that BANA should be required to pay fines or penalties. Daniel and Lanette Hall ("the Halls") object to the *cy pres* component of the Settlement Agreement.

With respect to the Fee Motion, Neumann, Vitale, Henry Clay Adkins, and Marie Halverson object that the requested fees are excessive and Mary Bennett objects that Class Counsel should not receive any award from the Settlement Fund. A final approval hearing was held on September 9, 2014. The Court requested supplemental information regarding expenses requested by counsel relating to two cases that were not part of the seven cases consolidated in the CAC; Class Counsel provided that information on September 15, 2014.

## DISCUSSION

### A.  Certification of the Settlement Class

#### 1.  Notice to the Class

The Court granted preliminary approval to the parties' proposed notice procedure, after certain amendments to the Class Notice were made following request by the Court. Dkt. 243. The Court is satisfied that the notice procedure was carried out according to the applicable standards.

---

[6] Per the Court's request, additional information was provided relating to the total loss of the Settlement Class with respect to the excess insurance claims.

The Court finds that notice of the Settlement was given to the Settlement Class by the best means practicable under the circumstances, including mailing the Class Notice to Settlement Class Members by U.S. Mail, and publishing the Class Notice, Settlement Agreement, and other relevant documents on the settlement website (www.FloodInsuranceSettlementBANA.com). The Court rejects the objections of the Hannas that the Class Notice was insufficient because it did not provide the estimated value of the claims, provide specific estimated recoveries for class members, or provide a mathematical formula to calculate recovery.

The Class Notice provided Settlement Class Members with all required information including, among other things: (1) a summary of the lawsuit and the claims asserted; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) an explanation of which Settlement Class Members must submit a claim and instructions as to how they may do so and the deadline for doing so; (5) a disclosure of the release of claims should they choose to remain in the Settlement Class; (6) an explanation of Settlement Class Members' opt-out rights, the date by which Settlement Class Members must opt out, and information regarding how to do so; (7) instructions about how to object to the Settlement and the deadline for Settlement Class Members to submit any objections; (8) the date, time, and location of the Final Approval Hearing;[7] (9) the internet address for the settlement website and the toll-free number from which Settlement Class Members could obtain additional information about the Settlement; (10) the names of the law firms representing the Settlement Class, and contact information for the co-lead law firms; and (11) information regarding how Class Counsel and the

---

[7] The Court notes that there was a typographical error in the Class Notice, which identified the date of the hearing as "Friday," September 9, 2014, instead of "Tuesday," September 9, 2014. This typographical error did not render the Class Notice insufficient because any Class Member who may have been confused about the date of the hearing could confirm the date by calling the toll-free number, visiting the settlement website, or contacting the Court.

named Class Representatives would be compensated. The Class Notice included a detailed plan for allocation of Settlement Shares and stated that the recovery from the Settlement Fund would be a *pro rata* portion of an individual claimant's Settlement Shares. This is sufficient. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (reaffirming that a class notice need only "generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard" and that proper notice "does not require an estimate of the potential value of [the] claims" (citation and quotation marks omitted)); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (holding that notice to the class is sufficient if it "describes the aggregate amount of the settlement fund and the plan for allocation" and stating that "[w]hile the Notice does not . . . analyze the expected value [of the claims], we do not see why it should").

The form and method of notifying the Settlement Class fairly and adequately advised Settlement Class Members of all relevant and material information concerning the Action and the terms of the proposed Settlement.[8] The Court finds that the Class Notice fully satisfies the requirements of due process and Rule 23.

### 2. Final certification

Plaintiffs move, without objection by BANA, to resolve this case as a Settlement Class. In order to certify a Settlement Class, the requirements of Federal Rule of Civil Procedure 23 must be satisfied. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Rule 23

---

[8] Objector Adkins argued in his reply memorandum and at the Fairness Hearing that the fact that the Court requested additional information regarding the estimated losses of the class demonstrates that the Class Notice was insufficient. This argument is without merit. The Court requested further information to assist the Court's evaluation as to whether the Settlement Agreement is fair, reasonable, and adequate. This is not the standard for notice to the class, which requires that the notice generally describe the Settlement in sufficient detail to alert any class member with adverse viewpoints to investigate and come forward. *Lane*, 696 F.3d at 826. The Class Notice here did so.

affords this Court with "broad discretion over certification of class actions . . . ." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011). A plaintiff seeking class certification must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and at least one subsection of Rule 23(b). *See, e.g.*, *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007). The parties agreed to certification of the class for settlement purposes, and the Court previously evaluated the requisite factors in conditionally certifying the class for settlement purposes in the preliminary approval of the Settlement Agreement. Having fully reviewed the record, the Court finds no reason to alter that assessment. Accordingly, the Court certifies for settlement purposes the following class:

> All persons who were sent a flood insurance cycle letter by BANA, Countrywide Home Loans, Inc., or Countrywide Home Loans Servicing, LP or who were charged for lender-placed flood insurance by BANA, Countrywide Home Loans, Inc., or Countrywide Home Loans Servicing, LP on or after January 1, 2007 and before April 4, 2014 in connection with a residential mortgage loan, home equity line of credit, reverse mortgage loan, or loan secured by shares in a cooperative housing association.

**B.  Settlement Agreement**

To approve a class action settlement, a court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *Lane*, 696 F.3d at 818. The settlement must be considered as a whole, and although there are "strict procedural requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure it is 'fair, adequate, and free from collusion.'" *Lane*, 696 F.3d at 818-19 (quoting *Hanlon* 150 F.3d at 1027). A number of factors guide this review, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and

views of counsel; (7) the presence of a governmental participant;[9] and (8) the reaction of the class members to the proposed settlement. *Id.* at 819. Courts within the Ninth Circuit "put a good deal of stock in the product of an arms-length [sic], non-collusive, negotiated resolution." *Rodriguez*, 563 F.3d at 965.

Additionally, class action settlements involve "unique due process concerns for absent class members who are bound by the court's judgments." *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013) (citation and quotation marks omitted). Where the settlement agreement is negotiated before formal class certification, as in this case, the court should engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) . . . ." *Id.* (citation and quotation marks omitted). Evidence of collusion may not be evident on the face of a settlement and a court should consider whether there is evidence of more subtle signs of collusion. *Staton v. Boeing Co.*, 327 F.3d 938, 958 n.12, 960 (9th Cir. 2003). Such evidence may include: (1) when counsel receives a disproportionate distribution of the settlement or when the settlement class members receive no monetary distribution but class counsel is amply rewarded, *Hanlon*, 150 F.3d at 1021; (2) when the parties negotiate an arrangement providing for the payment of attorney's fees separate and apart from class funds, which carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class," *Lobatz v. U.S.W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000); or (3) when the parties arrange for fees not awarded to revert to the defendant rather than be added to the class fund. *See Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004).

---

[9] This factor is not relevant to the proposed settlement in this case.

The Court reviews, in turn, the relevant factors bearing on the evaluation of whether the Settlement Agreement is fair, reasonable and adequate.

## 1. Strength of Plaintiffs' case and the risk, expense, complexity, and likely duration of further litigation

Plaintiffs continue to argue that they have a strong case, but they recognize the significant risks in continued litigation. Plaintiffs note that several courts have dismissed claims alleging unlawful commissions in lender-placed insurance claims such as alleged by Plaintiffs. Final Approval Motion at 12 (listing cases). Plaintiffs also note that courts, including two circuit courts, not including the Ninth Circuit, have dismissed claims similar to Plaintiffs' claims that BANA improperly required excessive flood insurance. Final Approval Motion at 13 (listing cases). Additionally, the United States Government filed *amicus* briefs in the two circuit court cases arguing that lenders may require FHA borrowers (such as Plaintiff Skansgaard) to maintain more flood insurance than is required by the U.S. Department of Housing and Urban Development or federal law. *Id.* Thus, although some courts, including this Court, have allowed excessive coverage claims to proceed past motions to dismiss or motions for judgment on the pleadings, there is a significant risk that such claims might not survive dispositive motions or might not prevail at trial.

In addition to the risk of dismissal before trial or loss at trial, continued litigation would be expensive and time-consuming. This settlement resolves seven different putative class actions pending in federal courts across the country. There is a strong likelihood that class certification would be contested in each case and that motions for summary judgment would be filed, requiring significant additional litigation. If claims proceeded beyond those motions, there could be several trials and likely appeals. In short, the litigation would be protracted and expensive. In

light of these considerations, the Court finds that the first two factors weigh in favor of granting final approval.

### 2. The risk of maintaining class action status

Plaintiffs faced significant risks on class certification. Although some courts have certified multi-state and national classes in other lender-placed insurance cases, other courts have denied certification in similar cases. Final Approval Motion at 14 (listing cases). This uncertainty increases the risk of maintaining the class action through trial. *Arthur v. Sallie Mae, Inc.*, 2012 WL 4075238, at *1 (W.D. Wash. Sept. 17, 2012). Where courts are split on class certification in similar cases, this factor weighs in favor of granting final approval. *See Rose v. Bank of Am.*, 2014 WL 4273358, at *5 (N.D. Cal. Aug. 29, 2014).

### 3. The amount offered in settlement

The Settlement Agreement requires BANA to pay $31 million into a non-reversionary fund. Plaintiffs describe this as "the largest common fund settlement in the history of lender-placed flood, hazard, or wind insurance litigation."[10]

This is the factor on which the Objectors primarily contend that the Settlement is not fair, reasonable, and adequate. The Objectors argue that: (1) the monetary relief is insufficient; (2) the non-monetary relief is insufficient; (3) BANA's ability to pay Settlement Class Members with an escrow credit is unfair; and (4) the *cy pres* component of the Settlement is unreasonable and the recipient does not have the requisite nexus to the claims alleged in this case. These objections are without merit.

---

[10] The Court notes that there are other lender-placed insurance settlements that are claim-in settlements, not common fund settlements, which may be larger than the Settlement Agreement, if those cases have a comparable claim return rate as in this case.

### a.  The monetary and non-monetary relief is sufficient

The monetary relief provided pursuant to the Settlement Agreement is sufficient. There are approximately 359,320 Settlement Class Members who will be receiving a payment from the Settlement Fund ("Participating Settlement Class Members"). As an initial matter, the fact that more than 54 percent of the class will be receiving payment from the Settlement Fund supports final approval. With respect to the specific recovery amounts, assuming attorney's fees at 25 percent of the Settlement Fund and that incentive awards, costs, and expenses are awarded as requested, the Participating Settlement Class Members will receive approximately $21.82 million from the Settlement Fund. The estimated damages of the Participating Settlement Class Members are approximately $164 million. Thus, the recovery for the Participating Settlement Class Members is approximately 13.3 percent of their estimated total damages. In considering damages for the entire class, including class members who will not receive any payment, the estimated damages are approximately $299 million. The recovery rate of the class as a whole, therefore, is approximately 7.3 percent.

Considering the total recovery of the Settlement and the risks of continued litigation, the Court finds this rate of recovery to be fair, adequate, and reasonable. *See, e.g.*, *Linney v. Cellular Ala. P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (noting that "the very essence of settlement is . . . a yielding of absolutes and an abandoning of highest hopes" (citation and quotation marks omitted)); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (finding that "standing alone, nine percent or higher constitutes a fair settlement even absent the risks associated with prosecuting these claims"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, securities class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"); *Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (noting that "an

agreement that secures roughly six to twelve percent of a *potential* trial recovery . . . seems to be within the targeted range of reasonableness") (emphasis in original).

The Hannas also object that the "excess insurance" claim is treated unfairly in comparison to the "commissioners" claim, thus rendering the relief unfair. The Hannas object that the excess insurance claim requires a claim form be submitted, whereas the commissions claim does not. This objection is rejected. The excess insurance claim includes class members who purchased private insurance after receiving a letter from BANA. Without a claim form, the parties have no way to know whether someone purchased private insurance and, if so, how much in coverage was purchased. The Settlement Shares and ultimate compensation from the Settlement Fund is based, in part, on the average coverage amount. Thus, claim forms are needed for this claim. Further, Plaintiffs have the discretion to negotiate a stronger settlement for the claim that Plaintiffs' counsel believes is the stronger claim. In light of the recent case law dismissing excess insurance claims, it was not unreasonable for Plaintiffs' counsel to negotiate a stronger settlement for the commissions claim.

The Hannas also argue that the excess insurance claim unfairly receives less compensation than the commissions claim. The estimated damages for the excess insurance claim for the entire class are approximately $174 million and the estimated recovery is approximately $6.58 million, for a recovery rate of 3.78 percent. With respect to the Participating Settlement Class Members, however, the estimated damages for the excess insurance claim are approximately $39 million, for a recovery rate of 16.87 percent. The commissions claim is estimated to have approximately $125 million in damages and $15.23 million in recovery, for a recovery rate of 12.18 percent. For persons who submitted a claim form, therefore, the recovery rate for the excess coverage claim is higher than for the commissions claim. The Court finds that

PAGE 13 – OPINION AND ORDER

any differences in treatment between the commissions claim and the excess coverage claim do not render the Settlement unfair or inadequate.[11]

The Settlement Agreement also provides sufficient non-monetary relief. The Settlement Agreement establishes prospective relief relating to the three categories of claims alleged by Plaintiffs for three years from the effective date of the Settlement Agreement. To address Plaintiffs' claims that BANA received improper "commissions" on the premiums paid for lender-placed flood insurance, the Settlement Agreement establishes that for three years BANA and its affiliates will not receive any commissions in connection with lender-placed flood insurance on any property securing a residential mortgage loan, home equity line of credit, reverse mortgage, or security instrument secured by shares in a cooperative housing association. To address Plaintiffs' claims relating to the alleged excessive flood insurance coverage requirements, the Settlement Agreement establishes that for all qualifying Settlement Class Members, for three years BANA will include "opt-out" letters with each "gap" cycle letter requesting additional flood insurance and will make such forms available upon request.[12] Finally, to address Plaintiffs' claim relating to cooperative housing, the Settlement Agreement establishes that for three years BANA shall not knowingly require Settlement Class Members in housing cooperatives to maintain flood insurance coverage where flood insurance is not independently required by their security instrument and shall fully refund premiums paid for such insurance to the extent that BANA becomes aware of such coverage.

---

[11] The Court also notes that the injunctive relief specifically addresses the concerns raised in the excess insurance claim.

[12] The Objectors who argue that the Settlement is unfair because the borrower must request the opt-out form misunderstand the terms of the Settlement Agreement—the opt-out form will be automatically included in every letter sent requesting additional insurance coverage. Borrowers may, in addition, request an opt-out form at any time during the three-year period.

The Court considers the monetary relief, injunctive relief, costs of notice and administration, and potential defenses to the claims in evaluating the adequacy of the recovery. The Court finds that the recovery to the Settlement Class is fair, reasonable, and adequate.

### b. Payment with an escrow credit is fair

The Court overrules the objection that for Settlement Class Members who have an active escrow account with BANA, payment through an escrow credit is unfair. Escrow credits are directly applied to amounts due and payable through escrow, including mortgage, taxes, and insurance. Additionally, the lender-placed insurance premiums at issue in this case were paid out of escrow funds. Thus, receipt of an escrow credit means that the Settlement Class Member will not have to pay out of pocket for whatever amount is covered by the escrow credit. Although an escrow credit can only be applied toward mortgage, taxes, or insurance, depending on what items are paid out of a particular escrow, this limitation does not render the Settlement unfair. The compensation is for alleged inflated insurance premiums, most of which were paid out of escrow, so an escrow credit is a reasonable form of payment.

### c. The *cy pres* recipient is appropriate

The Settlement Agreement establishes that all of the funds will be distributed to eligible Settlement Class Members. If checks are returned as undeliverable or funds are otherwise not distributed and the amount to be redistributed is equal to or more than $750,000, the amounts shall be redistributed to the class. If the amount to be redistributed is less than $750,000, the amount shall be awarded to the *cy pres* recipient, the Center for Responsible Lending.

The Halls object to this distribution plan, arguing that the threshold for redistribution to the class should be lower and that the *cy pres* recipient is not appropriate. The Court views these objections skeptically, as they were prepared by a professional objector who has repeatedly been found by courts to have an improper purpose in filing objections. *See* Final Approval Motion at

PAGE 15 – OPINION AND ORDER

27-28 (listing cases). Nevertheless, even if the objections were filed in good faith, the Court finds them to be without merit.

First, objections to any *cy pres* award are premature, because the entire Settlement Fund is to be distributed to the Settlement Class and only if there are checks returned as non-deliverable or checks that are otherwise not negotiated totaling less than $750,000, will the *cy pres* award be triggered. This objection, therefore, is not ripe. *See Rodriguez*, 563 F.3d at 966 (holding that the issue of the *cy pres* donation "becomes ripe only if the entire settlement fund is not distributed to class members. That trigger point has not been reached; no *cy pres* disbursement is imminent; and the fund in this case may well be depleted before *cy pres* kicks in. We therefore decline to consider the propriety of *cy pres* at this time").

Second, even if the objection were ripe, it would be overruled. There are approximately 359,320 Participating Settlement Class Members who will receive payment from the Settlement Fund. The administrative cost in sending checks to these class members is high. If the amount left for redistribution is less than $750,000, the amount each Participating Settlement Class member would receive would be $2 or less. It is reasonable to determine that the administrative costs to distribute such a low amount renders redistribution impracticable. The Court finds that the redistribution threshold of $750,000 is fair, reasonable, and adequate.

The Court also finds that the *cy pres* recipient is appropriate. The Center for Responsible Lending "is a nonprofit, non-partisan organization that works to protect homeownership and family wealth by fighting predatory lending practices." Center for Responsible Lending, http://www.responsiblelending.org/about-us/ (last visited September 11, 2014). The interests of this organization are aligned with the interests of the Settlement Class. The claims in this lawsuit include allegations of the predatory lending practices of force-placing flood insurance and

requiring excessive flood insurance, both at inflated costs, and adding those costs to the escrow account or mortgage balance due of the borrower.

### 4. The extent of discovery completed

Extensive discovery has been taken in the seven actions resolved under the Settlement Agreement. The parties had agreed to consolidate their discovery efforts before the settlement negotiations that led to the resolution of all seven cases in this Action. Bank of America produced more than 1.1 million documents comprising more than 4 million pages. Plaintiffs also produced documents and responded to written discovery. Class Counsel coordinated document storage and review efforts, using search terms, predictive coding, and manual review methods.

Additionally, numerous depositions were taken through the coordinated discovery. Plaintiffs, through a team of four attorneys, took the depositions of seven corporate designees and 11 additional fact witnesses. BANA took the depositions of four fact witnesses. In light of the extensive discovery that has been completed, the Court finds that this factor supports final approval.

### 5. The experience and views of counsel

Class Counsel are experienced class action litigators. BANA is also represented by experienced counsel. This factor supports final approval.

### 6. The reaction of the Settlement Class

The extremely positive reaction of the Settlement Class further demonstrates that the Settlement Agreement is fair and reasonable. *See, e.g.*, *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1343 (S.D. Fla. 2011) ("[N]ear unanimous approval of the proposed settlement[] by the class members is entitled to nearly dispositive weight in this court's evaluation of the proposed settlement[]." (quotation marks omitted)); *Nat'l Rural Telecomms. Coop. v. Direct TV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the

absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement . . . are favorable to class members."). Here, out of 663,192 Settlement Class Members who received notices in this case, 102,506 claim forms were returned, only 99 opted-out of the Settlement Class, and only four filed objections to the Settlement Agreement. The Court has reviewed the objections and finds that no Settlement Class Member has stated grounds that would provide a substantial reason to deny approval. Thus, this factor weighs in favor of approval.

### 7. The absence of collusion or other conflicts of interest

The Court finds that the Settlement is the product of an arm's-length negotiation, with assistance from experienced mediator Professor Green in multiple mediation sessions. There is no evidence of collusion or any other conflict of interest. BANA has and continues to dispute the claims against it, and the seven actions resolved in this settlement were extensively litigated (for two to four years, depending on the case) before the parties reached a settlement agreement.

Moreover, none of the three "subtle" signs of collusion are present here—the Settlement Class is to receive significant monetary and non-monetary benefits that are not disproportionately low compared to the requested attorney's fee award, the payment of attorney's fees is not separate from class funds, and the Settlement Fund is non-reversionary.

### 8. The claims release

Two Objectors argue that the release in this case is too broad, particularly because it releases state claims. This objection is overruled. The release is narrowly tailored to only flood insurance related claims. To the extent any Settlement Class Member did not wish to release his or her flood insurance related claim, that class member was able to opt out of the settlement. Releases such as the one included in the Settlement Agreement are standard in class action (and other) settlements and the Court finds the release to be reasonable.

### 9.   Conclusion

After considering the relevant factors and circumstances, the Court overrules the objections to the Settlement Agreement and finds that the Settlement Agreement is fair, reasonable, and adequate to the Settlement Class, and that each Settlement Class Member (except those who have submitted a timely and valid request for exclusion) shall be bound by the Settlement. The persons who have timely requested exclusion from the Settlement Class are not members of the Settlement Class, shall have no rights or interests with respect to the Settlement, and shall not be bound by any orders or judgments entered in respect to the Settlement.

## C.  Incentive Award, Attorney's Fees, and Costs

### 1.   Class representative incentive awards

"Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe*, 715 F.3d at 1163. They are often taken from a common settlement fund. *Id.* Although incentive awards are "fairly typical in class action cases," *Rodriguez*, 563 F.3d at 958, they should be scrutinized carefully to ensure "that they do not undermine the adequacy of the class representatives." *Radcliffe*, 715 F.3d at 1163. A court should analyze incentive awards individually and, as relevant to this case, should consider factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Staton*, 327 F.3d at 977 (citation and quotation marks omitted).  The adequacy of class representatives can also be undermined by incentive awards that are contingent on the named representatives approving the class settlement. *Radcliffe*, 715 F.3d at 1164-65.

Here, the requested incentive award is $2,500 for each of the ten named representatives, for a total incentive award of $25,000. Given the size of the Settlement Class and the $31 million

Settlement Fund, the incentive awards requested are not unreasonably high. The class benefited by having multiple named representatives because there are multiple alleged theories of recovery that involved different factual underpinnings and between them, the named Plaintiffs alleged the different theories. The named Plaintiffs also spent time and effort meeting and speaking with Class Counsel throughout the litigation, reviewing pleadings and documents, responding to discovery, and many of them were deposed. Moreover, the incentive awards are not contingent upon the named representatives' approval of the Settlement Agreement. The Court finds that the incentive awards are reasonable and do not undermine the adequacy of the named representatives.[13]

### 2.  Attorney's Fees

Requests for attorney's fees must be made by a motion pursuant to Federal Rules of Civil Procedure 54(d)(2) and 23(h), and notice of the motion must be served on all parties and class members. Fed. R. Civ. P. 23(h). When settlement is proposed along with a motion for certification, notice to class members of the fee motion ordinarily accompanies the notice of the settlement proposal itself. Advisory Committee Notes to Fed. R. Civ. P. 23(h). The deadline for class members to object to requested fees must be set after the motion for the fees and documents supporting the motion have been filed. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010). "Allowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members." *Id.* at 994. Here, the Class Notice and filing of the Fee Motion complied with *In re Mercury*,

---

[13] The Court overrules Ms. Bennett's objection that because "[t]he number of people involved did not increase the work required" incentive awards should not be awarded. Incentive awards are not awarded because class representatives increase the work required, but because they provide a service to the class and the class benefits from that service.

providing class members with the opportunity to review class counsel's Fee Motion and supporting documents before the deadline to object.

In considering the amount of attorney's fees for class counsel where there is a common fund, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Under either method, the court must exercise its discretion to achieve a "reasonable" result. *Id*. Because reasonableness is the goal, "mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

The U.S. Court of Appeals for the Ninth Circuit has established that when using the percentage method in a common fund case, 25 percent is the "benchmark" fee award. *Hanlon*, 150 F.3d at 1029; *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) ("Twenty-five percent is the 'benchmark' that district courts should award in common fund cases."). This amount may be adjusted, however, when "special circumstances" warrant a departure. *In re Bluetooth*, 654 F.3d at 942. Courts must place in the record the relevant special circumstances. *Id*. Factors that may be considered in making such a departure include: (1) the result obtained; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks involved in the litigation; (7) the reaction of the class; (8) non-monetary or incidental benefits, including helping similarly situated persons nationwide by clarifying certain laws; and (9) comparison with counsel's lodestar. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *18 (C.D. Cal. June 10, 2005).

PAGE 21 – OPINION AND ORDER

Plaintiffs' counsel requests that the Court apply an upward departure and award attorney's fees in the amount of 30 percent of the settlement fund—$9,300,000. The Objectors argue that Court should award the benchmark 25 percent fee, with one Objector arguing that no fees are warranted. After considering the objections and the relevant factors, the Court finds that there are insufficient special circumstances to justify either an upward or a downward departure from the benchmark fee of 25 percent—$7,750,000.

### a.   Results obtained, including non-monetary results

The results obtained for the Settlement Class are fair, reasonable, and adequate, but are not special or unusual. For example, the largest category of Settlement Class Members who will receive a payment from the Settlement Fund are the nearly 313,000 persons who are automatically entitled to payment under Paragraph 29(i) of the Settlement Agreement in compensation for the alleged "commissions" claim. These persons will receive Settlement Shares equal to 12 percent of their net lender-placed premiums. The actual payment, however, will be only a small percentage of the Settlement Shares because it is calculated *pro rata*. Assuming a 25 percent fee award, the payment to these Settlement Class Members will be approximately 18.96 percent of their Settlement Shares (reflecting 12 percent of premiums paid); *i.e.* a net of 2.28 percent of premiums paid.[14]

In contrast, the class settlement in a similar force-placed insurance case cited by Plaintiffs and argued as providing *less* monetary benefit than this settlement, pays to its settlement class members seven or 11 percent of their total premiums, depending on the date the premiums were

---

[14] The net distribution to the Settlement Class, assuming a 25 percent fee award and all other costs and expenses awarded as requested, is $21,820,000. This amount is divided by the estimated total Settlement Shares of $115,044,209, resulting in settlement compensation equal to 18.96 percent of Settlement Shares. Because the Settlement Shares for the commissions claim reflect 12 percent of premiums paid, the Court calculates 18.96 percent of 12 percent, for net compensation of 2.28 percent of premiums paid.

paid,[15] without any additional *pro rata* reduction. *Fladell v. Wells Fargo*, No. 13-cv-60721,

Docket No. 182 (S.D. Fl.). In total, the *Fladell* settlement makes available to its 1,340,157 class

members monetary benefits estimated at more than $281 million[16] and injunctive relief for five

years (compared to the three years in the Settlement Agreement) for non-monetary benefits

valued at more than $234 million. Attorney's fees, costs, and incentive awards are paid

separately in Fladell and, thus, do not reduce class members' recovery.

A settlement structured similarly to the *Fladell* settlement was reached in *Casey v.

Citibank, N.A.*, Civil Action No. 5:12-cv-820-DNH-DEP (N.D. NY). In this settlement, class

members claiming force-placed flood insurance will receive 8 percent of premiums charged and

class members claiming force-placed hazard insurance will receive 12.5 percent of premiums

charged, with six years of injunctive relief.

Although the settlements in *Fladell* and *Casey* provide longer injunctive relief and better

monetary relief for those class members who submit a claim form, the Settlement Agreement

here provides for automatic payment to all Settlement Class Members who had lender-placed

flood insurance placed by BANA. This equates to more than 310,000 Settlement Class Members.

Thus, the final amount paid to class members by BANA may be greater than the amounts paid by

the defendants in *Fladell* or *Casey*, if the claim form response rates are low in those cases.

Additionally, all Settlement Class Members allegedly injured by the "commissions" claim will

---

[15] The defendants in *Fladell* received commissions of 11 percent of premiums until a particular date, at which time they stopped receiving commissions entirely. The settlement recovery in *Fladell* is 11 percent of premiums during the time the defendants were receiving commissions and seven percent after the defendants stopped receiving commissions.

[16] The *Fladell* settlement requires that claim forms be submitted in order for class members to receive payment. Presumably less than 100 percent of class members will return claim forms and, thus, the actual settlement payments by the defendants will be less than $281 million.

receive some compensation in this case, whereas in *Fladell* and *Casey*, class members who do not return a claim form will not receive any compensation.

The Court has considered the monetary and non-monetary relief obtained in the Settlement Agreement and settlements reached in other, similar force-placed insurance cases, The Court finds that this factor does not support any departure, upward or downward, from the 25 percent benchmark fee.

### b.   Effort expended by counsel and counsel's experience and skill

Class Counsel are all highly skilled, have significant class action experience, and expended significant effort pursuing the litigation. That is not unusual, however, in the context of complex, national class actions. This factor supports awarding the "benchmark" 25 percent fee and does not support any departure.

### c.   Complexity of the issues and risks involved

This was a complex class action that had serious risks in light of the split in the court decisions on certification and on allowing the claims to proceed to trial. The Court finds, however, that the $7,750,000 "benchmark" fee award adequately compensates Class Counsel for the risk and complexity of this case.

### d.   Reaction of the class

The reaction of the class was positive—more than 100,000 claim forms were returned (reflecting a response rate of more than 15 percent), only 99 Settlement Class Members opted-out, and only five Settlement Class Members objected to the fee award. The Court finds that the benchmark 25 percent fee adequately reflects the reaction of the class and is a reasonable fee under all the circumstances of this case.

e.   **Lodestar comparison**

Class Counsel submits that they have spent more than 28,000 hours on the consolidated cases, for a lodestar fee value of more than $11,000,000. This lodestar calculation does not include the additional time spent by Class Counsel seeking final approval of the Court for the Settlement Agreement and requested fees and costs. Although Class Counsel did not file detailed time records, each law firm filed a declaration setting out the time spent and hourly rate for each timekeeper. These records do not indicate how much time was spent in any given aspect of the litigation, such as investigating and drafting the claims, motions practice, or settlement negotiations and mediation, making it difficult for the Court assess the reasonable lodestar amount for a lodestar check on the requested percentage of the fund fee award.

The Court believes that the total time listed may be more than would have been expended, and thus more than is reasonably necessary, if the matter had been litigated as a single class action lawsuit from the outset. Because this settlement resolves seven separate actions, some of the work done before the settlement negotiations and mediation may be duplicative and redundant as the various firms engaged in separate, but similar, initial case investigation and motion practice. The Court recognizes that Class Counsel coordinated their discovery efforts in the Actions, but the remaining litigation efforts were pursued separately, thereby resulting in some duplication and inefficiencies.

The Court finds that the lodestar check supports a 25 percent fee award. Although it may also support a higher fee award, considering all of the circumstances in this case, the Court does not find that the lodestar check requires an upward departure from the 25 percent benchmark fee award and finds that a 25 percent fee award is reasonable.

### f.  Conclusion

The Court finds that a reasonable attorney's fee under all of the circumstances of this case is 25 percent of the Settlement Fund—$7,750,000. The Court reaches this conclusion based on its own analysis of the requested fee award and was not materially assisted by the comments made by any of the Objectors.

### 3.  Costs

Plaintiffs' counsel seeks reimbursement from the common fund in the amount of $736,294.42[17] for litigation costs, including legal research, investigation, discovery, travel, mediation fees, and document production and storage. Counsel also seeks reimbursement in the amount of $630,328.15 in claim administration expenses, to cover the cost of distributing the Class Notice and administering the class to date and estimated costs for final distribution.[18]

Some of the Objectors objected that the expenses requested in this case are inadequately documented. The Court finds that the expenses are adequately documented. Each firm submitted declarations listing total expense amounts by category, averring that the expenses were reasonably and necessarily incurred, and offering to submit additional documentation if required by the Court.

The Court finds that the amended requested expenses, after Plaintiffs' counsel withdrew the request for $38,267.11 in costs incurred litigating cases not before the Court, have been

---

[17] Plaintiffs' counsel originally sought $774,561.53 in costs. After the final approval hearing and in response to the Court's request for information regarding requested costs incurred litigating cases not before the Court, Plaintiff's counsel withdrew their request for costs related to those cases, which totaled $38,267.11. Dkt. 284. Consequently, Plaintiffs' counsel now requests costs in the amount of $736,294.42.

[18] The claims administration costs for managing and distributing the Settlement Fund after final approval has been estimated and is included in this request. To the extent additional fees are incurred beyond the original estimate, an additional request will be submitted by the claims administrator for approval.

reasonably and necessarily incurred and are recoverable from the proceeds of the common fund. *See, e.g.*, *Wininger v. SI Mgmt., L.P.*, 301 F.3d 1115, 1120-21 (9th Cir. 2002) (noting that "jurisdiction over a fund allows for the district court to spread the costs of the litigation among the recipients of the common benefit"); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement.").

## CONCLUSION

Plaintiffs' Final Approval Motion (Dkt. 268) is GRANTED. Plaintiffs' Fee Motion (Dkt. 246) is GRANTED IN PART. Attorney's fees are awarded in the amount of $7,750,000, which is 25 percent of the Settlement Fund. The Court further awards each named Plaintiff $2,500 as an incentive award, $736,294.42 to Plaintiffs' counsel for litigation costs, and $630,328.15 to Analytics, LLC for claim administration expenses. The Court will separately enter an Order Granting Final Approval of Class Action Settlement.

**IT IS SO ORDERED**.

DATED this 18th day of September, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge